TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00625-CV






St. Paul Insurance Company, Appellant



v.



Texas Department of Transportation, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 97-12662-A, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







 This is an appeal from a summary judgment granted in favor of the Texas
Department of Transportation ("TxDOT") on its declaratory judgment action against the St. Paul
Insurance Company. TxDOT sued seeking a declaration that St. Paul had a duty to defend it as
an additional insured in connection with a lawsuit arising out of a highway construction project. 
In one issue on appeal, St. Paul claims the trial court erred in granting summary judgment in
TxDOT's favor. We will affirm the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 TxDOT contracted with J.D. Abrams, Inc. to construct a five-mile section of
Beltway Eight outside Houston. The contract required Abrams, a general contractor, to provide
commercial general liability ("CGL") insurance for TxDOT until the completion of the project. 
St. Paul issued a package policy to Abrams containing CGL protection for a one-year period
beginning November 1, 1993. In the policy, St. Paul agreed to pay amounts that Abrams was
legally required to pay as damages for covered bodily injury and property damage that occurred
while the agreement was in effect. The policy outlined St. Paul's duty to defend:


Right and Duty to Defend. We'll have the right and duty to defend any claim or
suit for covered injury or damage . . . made or brought against any protected
person. We'll do so even if any of the allegations of any such claim or suit are
groundless, false, or fraudulent. But we have no duty to perform other acts or
services.



The policy also contained an additional-insured endorsement, which extended coverage to any
person or organization that Abrams was required by contract to show as an "additional protected
person." However, coverage was only provided for covered injury or damage that resulted from
Abrams' work for TxDOT or TxDOT's general supervision of that work. (1)

 In August 1995, a class-action lawsuit was filed in Brazoria County against
TxDOT, Abrams, and others by a group of property owners and residents of northern Brazoria
County. The lawsuit alleges that the construction of Beltway Eight caused flooding that damaged
the Brazoria plaintiffs' residences in October 1994; the Ninth Amended Petition is the only petition
relevant in this appeal. (2) TxDOT demanded that St. Paul defend it as an additional insured. In a
February 1997 letter to TxDOT, St. Paul stated: "St. Paul also expressly reserves its rights to
allocate defense costs between any covered and non-covered claims and to recover from TxDOT
the defense costs allocable to the defense of non-covered allegations. In particular, the defense
costs allocable to the defense of TxDOT against the allegations that it negligently designed this
project would not be covered under the St. Paul policy." In September, St. Paul wrote: "In
summary, St. Paul does not deny coverage to TxDOT. St. Paul does recognize there is some
potential coverage for TxDOT but the more challenging issue is how do we handle TxDOT's
defense." However, St. Paul refused to defend TxDOT, claiming that TxDOT would be
adequately protected from vicarious liability by the defenses asserted by Abrams.

 TxDOT then sued, seeking a declaration that St. Paul owed a duty to defend it in
the Brazoria plaintiffs' lawsuit. In its motion for summary judgment, TxDOT argued that Texas
law requires an insurer to defend the entire suit if any of the insured's claims are covered. 
TxDOT pointed out that the Brazoria plaintiffs' petition includes the following allegations: that
the plaintiffs' damages were caused by the diversion of runoff stormwaters resulting in part from
the construction of Beltway Eight; that TxDOT, Abrams and other defendants "designed,
scheduled, constructed and supervised" the construction of Beltway Eight and its drainage
channels; and that the government defendants TxDOT and Harris County Flood Control District
"collectively, through their respective employees or representatives," committed acts that resulted
in an invasion of the plaintiffs' property and constituted a nuisance. St. Paul responded that the
policy required it to defend only covered claims, not the entire suit. The trial court severed the
issue of St. Paul's duty to defend from TxDOT's claims for attorney's fees and costs; it then
granted TxDOT's motion for summary judgment in the declaratory judgment action, declaring that
TxDOT was entitled to "a reasonable non-conflicted legal defense."

 In its sole issue on appeal, St. Paul asserts that the trial court improperly granted
summary judgment for TxDOT in its suit for declaratory judgment. St. Paul argues that the trial
court erred because the Brazoria plaintiffs' petition "failed to allege facts or claims for damages
that would trigger a duty to defend for an additional insured under the specific policy provisions
at issue."


DISCUSSION

 We review this summary judgment under well-established standards: (1) the
movant for summary judgment has the burden of showing that there is no genuine issue of fact and
that it is entitled to judgment as a matter of law; (2) in deciding whether there is a material fact
issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;
(3) every reasonable inference must be indulged in favor of the non-movant and any doubts
resolved in its favor. See Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 800 (Tex. 1994);
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Whether an
insurance carrier owes a duty to defend under an insurance policy is a question of law that the
appellate court reviews de novo. See State Farm Gen. Ins. Co. v. White, 955 S.W.2d 474, 475
(Tex. App.--Austin 1997, no pet.); State Farm Lloyds v. Kessler, 932 S.W.2d 732, 735 (Tex.
App.--Fort Worth 1996, writ denied).

 The duty to defend is broader than the duty to indemnify. See Texas Property &
Cas. Ins. Guar. Ass'n v. Southwest Aggregates, Inc., 982 S.W.2d 600, 606 (Tex. App.--Austin
1998, no pet.); Colony Ins. Co. v. H.R.K., Inc., 728 S.W.2d 848, 850 (Tex. App.--Dallas 1987,
no writ). Once coverage has been found for any portion of a suit, an insurer must defend the
entire suit. See Lafarge Corp. v. Hartford Cas. Ins. Co., 61 F.3d 389, 393, 395 (5th Cir. 1995);
St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 917 S.W.2d 29, 56 (Tex. App.--Amarillo
1995), rev'd in part on other grounds, 974 S.W.2d 51 (Tex. 1998); Maryland Cas. Co. v. Moritz,
138 S.W.2d 1095, 1097 (Tex. Civ. App.--Austin 1940, writ ref'd). This is because the insurance
contract obligates the insurer to defend its insured, not to provide a partial defense. See Southwest
Aggregates, 982 S.W.2d at 606.


The "Eight Corners" Rule

 An insurer's duty to defend is determined by the allegations in the pleadings and
the language of the insurance policy. See National Union Fire Ins. Co. v. Merchants Fast Motor
Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997); Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d
819, 821 (Tex. 1997); American Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 847-48 (Tex.
1994). This is known as the "eight corners" rule. (3) See National Union, 939 S.W.2d at 141. In
applying the eight corners rule, we give the allegations in the petition a liberal interpretation. As
the supreme court has explained:


Where the complaint does not state facts sufficient to clearly bring the case within
or without the coverage, the general rule is that the insurer is obligated to defend
if there is, potentially, a case under the complaint within the coverage of the policy. 
Stated differently, in case of doubt as to whether or not the allegations of a
complaint against the insured state a cause of action within the coverage of a
liability policy sufficient to compel the insurer to defend the action, such doubt will
be resolved in the insured's favor.



Id. (quoting Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex.
1965)). In reviewing the underlying pleadings, the court must focus on the factual allegations that
show the origin of the damages rather than on the legal theories alleged. See id; Adamo v. State
Farm Lloyds Co., 853 S.W.2d 673, 676 (Tex. App.--Houston [14th Dist.] 1993, writ denied) ("It
is not the cause of action alleged that determines coverage but the facts giving rise to the alleged
actionable conduct."). The factual allegations against the insured should be considered in light
of the policy provisions without reference to their truth or falsity and without reference to what
the parties know or believe to be the true facts. See Argonaut Southwest Ins. Co. v. Maupin, 500
S.W.2d 633, 635 (Tex. 1973). However, the court may not read facts into the pleadings, may not
look outside the pleadings, and may not "imagine factual scenarios which might trigger coverage."
National Union, 939 S.W.2d at 142.


The Allegations in the Brazoria Plaintiffs' Petition

 The petition names twenty individuals and corporations as defendants and divides
them into three groups: Government Entities, Engineers/Contractors, and Developers. TxDOT
is included as a Government Entity and Abrams as an Engineer/Contractor. In a section entitled
"Factual Background" the petition states:


 On or about October 17 and 18, 1994, Plaintiffs and those they seek to
represent, suffered extensive damages to their persons, residences, and property
located in northern Brazoria County and encompassed in the Class Area. Said
damages were due in whole or in part to diversion of run-off stormwaters in the
Clear Creek and Mary's Creek watersheds and the subsequent presence of
floodwaters overflowing from Clear Creek and Mary's Creek. Although most of
the Plaintiffs and those they seek to represent had never experienced flooding,
Plaintiffs' residences and properties were inundated with stormwaters. As a result
of the flood, the northern Brazoria County area experienced millions of dollars in
damages.


. . . .


 The flooding in the Class Area was caused by two primary factors: the
uncontrolled development that occurred in the Class Area and the construction of
Beltway 8.



The petition further charges that at the time of the flood in October 1994, proper stormwater and
flood mitigation measures were not in place; "no regional detention was in place, although the
original plans called for three regional detention sites"; and the "channel rectification plan" was
not in place. The plaintiffs allege that


The construction of Beltway 8 had the effect of changing the direction of flows in
the floodplain from that occurring under natural conditions, diverting far greater
flows to the south of the Beltway into Clear Creek. . . . The widening of the
floodplain caused by the construction of Beltway 8 has caused additional or more
severe flooding that would not have occurred prior to the construction.



 As discussed above, the petition alleges that TxDOT and Abrams "designed,
scheduled, constructed and supervised" the construction of Beltway Eight and its drainage
channels. We are required to read this pleading liberally in favor of the insured. See National
Union, 939 S.W.2d at 141. Thus, the petition can be read to allege that (1) Abrams constructed
Beltway Eight with inadequate flood-control measures, (2) TxDOT supervised the construction,
and (3) both defendants' acts and omissions caused injury to the plaintiffs. Because Abrams' work
was done pursuant to its contract with TxDOT, we believe these allegations fall squarely within
the terms of the policy providing additional-insured coverage for damage resulting from Abrams'
work for TxDOT or TxDOT's general supervision of that work.

 St. Paul denies that TxDOT is an additional insured, and claims that the Brazoria
plaintiffs "made absolutely no allegation or claim that TxDOT must answer through vicarious
liability for Abrams' defective work." We reject these arguments. First, TxDOT is an additional
insured under the plain terms of the policy set forth above because the construction contract
required Abrams to show TxDOT as an "additional protected person." Second, to the extent St.
Paul believes that vicarious liability must be alleged against TxDOT to trigger St. Paul's duty to
defend, St. Paul misunderstands its own policy or the nature of vicarious liability. For instance,
an allegation that TxDOT negligently supervised Abrams' construction work for TxDOT--an
allegation of direct negligence on TxDOT's part--would trigger St. Paul's duty to defend under
the policy's additional insured endorsement. Contrary to St. Paul's assertion, the petition need
not allege that TxDOT is vicariously liable for Abrams' negligence. 

 St. Paul also argues that "none of the facts asserted that the plaintiffs' claims for
damages resulted from Abrams' work for TxDOT or from TxDOT's supervision of Abrams'
work." We agree that by reading only selected parts of the petition, the pleading could be
construed in the manner St. Paul urges. However, St. Paul's argument focuses on the causes of
action, ignoring the facts alleged in the "Factual Background" section. This reading is contrary
to the requirement that we focus on factual allegations rather than legal theories. See National
Union, 939 S.W.2d at 141. Moreover, the additional-insured endorsement provides coverage for
damage that "results from" Abrams' work for TxDOT or TxDOT's supervision of that work; to
be covered, the claim need only arise out of Abrams' work or TxDOT's supervision. Finally, we
must give the petition a liberal interpretation that favors TxDOT. See id. Viewed in this light,
the petition makes at least some claims against TxDOT that are covered under the policy.

 St. Paul attempts to avoid its duty to defend by claiming several defenses to the
causes of action pleaded in the petition. First, St. Paul argues that the policy's "professional
services" exclusion negates its duty to defend. This exclusion precludes coverage for claims
arising out of Abrams' provision or receipt of professional services. The policy does not define
"professional services," but states that it includes: (1) "The preparing, approving, or failing to
prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or
specifications"; and (2) "[s]upervisory, inspection, or engineering services."

 We are unable to locate, and neither party brings to our attention, any Texas cases
that construe the phrase "professional services" in the factual context presented here. (4) However,
we believe the exclusion does not apply in the present situation. The "additional protected
persons" endorsement provides coverage for the insured's work for the additional insured or the
additional insured's general supervision of that work. As TxDOT points out, the endorsement is
preceded by the statement: "This change broadens coverage." We fail to understand how St. Paul
can broaden its policy coverage to specifically include supervision and then claim that such activity
is excluded as a "professional service." St. Paul collected a premium for coverage of additional
insureds but would interpret its professional services exclusion to exclude all such coverage. St.
Paul's interpretation would render the policy meaningless to all additional insureds--in this case,
all persons required to be named by Abrams as "additional protected persons." (5) Furthermore, St.
Paul assumes that the factual allegations in the petition include claims for professional services;
however, the broad allegations are subject to different interpretations, some of which might not
involve professional services even if others do. We reject St. Paul's argument that the policy's
"professional services" exclusion negates its duty to defend TxDOT.

 St. Paul next argues that because the policy's intentional injury exclusion negates
any coverage for gross negligence or intentional torts, it has no duty to defend TxDOT. In
support, St. Paul cites Trinity Universal Insurance Co. v. Cowan, 945 S.W.2d 819 (Tex. 1997). 
In Cowan, a photo lab employee made and distributed to his friends unauthorized copies of
revealing photographs of the plaintiff that had been submitted for developing. See id. at 820-21.
The supreme court held that the employee's insurer had no duty to defend because the employee's
conduct was not accidental, and the fact that he did not expect or intend the plaintiff to learn of
his actions was irrelevant. See id. at 827-28.

 Cowan is distinguishable because the insured's act of copying and distributing
photographs of the plaintiff was unquestionably intentional. In contrast, the factual allegations in
the present case--the failure to prevent highway construction from causing stormwater
flooding--can naturally be read to encompass ordinary negligence, not just gross negligence or
intentional torts. And appropriately, the Brazoria plaintiffs' petition specifically includes
allegations of negligence. Although the plaintiffs also allege gross negligence and intentional
torts, this is not controlling because we must focus on the facts alleged, not the legal theories
pleaded. Moreover, that coverage may not be available for some of the causes of action pleaded
does not relieve St. Paul of its duty to defend TxDOT. See Lafarge, 61 F.3d at 393, 395;
Dal-Worth Tank Co., 917 S.W.2d at 56; Moritz, 138 S.W.2d at 1097.

 Reading the petition liberally in TxDOT's favor, it contains factual allegations that
Abrams performed highway construction for TxDOT and that TxDOT supervised Abrams' work. 
We reject St. Paul's interpretation of the petition because it focuses on the causes of action 
pleaded, not the facts alleged. We also reject St. Paul's argument that policy defenses negate its
duty to defend. We therefore hold that the trial court correctly declared that St. Paul has a duty
to defend TxDOT in the Brazoria plaintiffs' suit. St. Paul's sole issue is overruled.


CONCLUSION

 The summary judgment is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 26, 1999

Publish
1. The actual language of the additional-insured endorsement is as follows:


1. The following is added to the Who is Protected Under This Agreement section. This
change broadens coverage.

Additional protected persons. Any person or organization you are required in a written
contract to show as an additional protected person is an additional protected person. But
only for covered injury or damage that results from:

 * premises you own, rent or lease;

 * the maintenance, operation or use of equipment they lease to you;

 * your work for them; or

 * their general supervision of that work.


(Emphasis added.)
2. The court evaluates an insurer's duty to defend by reviewing only the latest amended
pleading. See Tex. R. Civ. P. 65 (substituted pleading takes place of original); Rhodes v. Chicago
Ins. Co., 719 F.2d 116, 119 (5th Cir. 1983).
3. The "eight corners" rule is also sometimes called the "complaint allegation" rule. See
Cowan, 945 S.W.2d at 821; Garcia, 876 S.W.2d at 847-48.
4. As the court of appeals observed in Atlantic Lloyd's Insurance Co. v. Susman Godfrey,
L.L.P., 982 S.W.2d 472, 476 n.3 (Tex. App.--Dallas 1998, pet. denied): "Previous cases
discussing the term 'professional services' most frequently involve medical negligence claims." 
See, e.g., Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd's Ins. Co., 875 S.W.2d 788, 791
(Tex. App.--Eastland 1994, writ denied) (medical technician's administration of sedative to patient
fell within professional services exclusion).
5. While St. Paul argues that TxDOT "did not plead that any portion of the insurance contract
was ambiguous," a court may conclude that a contract is ambiguous even in the absence of such
a pleading by either party. See Sage Street Assocs. v. Northdale Const. Co., 863 S.W.2d 438, 445
(Tex. 1993).



the Brazoria plaintiffs' petition specifically includes
allegations of negligence. Although the plaintiffs also allege gross negligence and intentional
torts, this is not controlling because we must focus on the facts alleged, not the legal theories
pleaded. Moreover, that coverage may not be available for some of the causes of action pleaded
does not relieve St. Paul of its duty to defend TxDOT. See Lafarge, 61 F.3d at 393, 395;
Dal-Worth Tank Co., 917 S.W.2d at 56; Moritz, 138 S.W.2d at 1097.

 Reading the petition liberally in TxDOT's favor, it contains factual allegations that
Abrams performed highway construction for TxDOT and that TxDOT supervised Abrams' work. 
We reject St. Paul's interpretation of the petition because it focuses on the causes of action 
pleaded, not the facts alleged. We also reject St. Paul's argument that policy defenses negate its
duty to defend. We therefore hold that the trial court correctly declared that St. Paul has a duty
to defend TxDOT in the Brazoria plaintiffs' suit. St. Paul's sole issue is overruled.


CONCLUSION

 The summary judgment is affirmed.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: August 26, 1999

Publish
1. The actual language of the additional-insured endorsement is as follows:


1. The following is added to the Who is Protected Under This Agreement section. This
change broadens coverage.

Additional protected persons. Any person or organization you are required in a written
contract to show as an additional protected person is an additional protected person. But
only for covered injury or damage that results from:

 * premises you own, rent or lease;

 * the maintenance, operation or use of equipment they lease to you;

 * your work for them; or

 * their general supervision of that work.