NUMBER 13-00-552-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


ADMIRAL INSURANCE COMPANY, Appellant,


v.


RIO GRANDE HEART SPECIALISTS OF SOUTH TEXAS, INC., Appellee.

___________________________________________________________________


On appeal from the 319th District Court of Nueces County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Dorsey, Yañez, and Rodriguez

Opinion by Justice Yañez

 


This appeal is brought by Admiral Insurance Company ("Admiral") to challenge the decision by the trial court to deny a
summary judgment filed by Admiral and grant summary judgment in favor of appellee, Rio Grande Heart Specialists of
South Texas ("RGH"). We affirm.

Factual and Procedural History

The litigation which produced this appeal arose from a lawsuit filed by two cardiologists against RGH. (1) The cardiologists
alleged that they had been enticed to work for RGH, abandoning their successful practices at The Heart Clinic, a
consortium of cardiologists. After coming to RGH, the cardiologists became convinced that RGH was not operating its
facility as promised, and filed suit against RGH. RGH had an insurance contract with Admiral, and made a demand that
Admiral provide a defense against the cardiologists' suit. 

 Admiral filed suit under the Uniform Declaratory Judgment Act (2) alleging that it had no duty to defend RGH against the
cardiologists' lawsuit. Admiral filed a motion for summary judgment in the declaratory judgment case, based on the
cardiologists' first amended original petition in the underlying suit. RGH also filed a motion for summary judgment, also
based on the first amended original petition in the underlying suit. The trial court denied Admiral's motion and granted
RGH's. Admiral now appeals, arguing that the trial court erred by denying its summary judgment motion and granting
RGH's summary judgment motion. 

 Admiral raises four issues on appeal, arguing: 1) that the allegations raised in the underlying suit fall outside the scope of
the insurance policy with RGH; 2) exclusions in the policy unambiguously exclude the claims in the underlying suit from
coverage; 3) the underlying suit requests equitable remedies not encompassed within the insurance policy's definition of
damages; and 4) petitions filed in the underlying suit, subsequent to the granting of summary judgment in the instant case,
did not include any negligence-based claims, and, therefore, the trial court should have granted a new trial for Admiral on
the issue of coverage. 

Standard of Review

A summary judgment movant has the burden of showing there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985); CIGNA Lloyds
Ins. Co. v. Bradleys' Elec., Inc., 33 S.W.3d 102, 104 (Tex. App.-Corpus Christi 2000, pet. denied). Where the only
question presented to the trial court was a question of law and both sides moved for summary judgment, the appellate court
should render the judgment that the trial court should have rendered. Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988); 
Bradleys' Elec., Inc., 33 S.W.3d at 104; The Cadle Co. v. Butler, 951 S.W.2d 901, 905 (Tex. App.-Corpus Christi 1997, no
writ).

Duty to Defend

 An insurer's duty to defend is determined by comparing the factual allegations in the pleadings to the language of the
insurance policy. National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141
(Tex. 1997); Bradleys' Elec., Inc., 33 S.W.3d at 104. This is often referred to as the "eight corners" rule because the
inquiry is limited to the four corners of the insurance policy and the four corners of the plaintiff's petition. National Union
Fire Ins. Co. of Pittsburgh, 939 S.W.2d at 141; Bradleys' Elec., Inc., 33 S.W.3d at 104. If a petition does not allege facts
within the scope of coverage, an insurer is not legally required to defend a suit against its insured. National Union Fire Ins.
Co. of Pittsburgh, 939 S.W.2d at 141; American Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 848 (Tex. 1994); 
Bradleys' Elec., Inc., 33 S.W.3d at 104. When applying the eight corners rule, if the appellate court finds the policy is
vague, it construes the policy against the insurer in favor of finding a duty to defend. Houston Petroleum Co. v. Highlands
Ins. Co., 830 S.W.2d 153, 155 (Tex. App.-Houston [1st Dist.] 1990, writ denied).

 When deciding if a duty to defend exists, appellate courts assume the facts in the plaintiff's petition are true, and determine
if the claims fall within the limits of the policy. Id. The factual allegations within a petition are liberally interpreted when
determining if a petition alleges facts that potentially state a claim within the coverage of a policy. National Union Fire
Ins. Co. of Pittsburgh, 939 S.W.2d at 141; Bradleys' Elec., Inc., 33 S.W.3d at 104. Any doubt as to whether the allegations
state a cause of action within the coverage of the policy is resolved in the insured's favor. National Union Fire Ins. Co. of
Pittsburgh, 939 S.W.2d at 141; Bradleys' Elec., Inc., 33 S.W.3d at 104. The focus of the inquiry is on the facts alleged, not
the legal theories alleged. National Union Fire Ins. Co. of Pittsburgh, 939 S.W.2d at 141; Bradleys' Elec., Inc., 33 S.W.3d
at 104.

The Petition in the Underlying Suit

 The cardiologists raised several allegations. According to their petition, RGH made a number of representations to the
cardiologists, designed to induce the cardiologists to leave their existing practice at The Heart Clinic, and practice at RGH
instead. According to their petition, the cardiologists relied upon RGH's representations, left their own practice, and "began
a new practice in partnership with [RGH]." The cardiologists accused RGH of having created a "sham" corporation, which
was used to negotiate employment contracts, and then employ, the cardiologists. The cardiologists accuse RGH of
misleading them, either intentionally or negligently, into working in RGH's cardiology program and then engaging in
wrongful conduct to deprive the cardiologists of money. In the alternative, the cardiologists allege that RGH was negligent
in making promises to the cardiologists then failed to exercise reasonable care in obtaining information for, or
communicating information to, the cardiologists, resulting in harm to the cardiologists. 

The Scope of the Insurance Policy

 In its first issue, Admiral argues that the trial court erred in granting RGH's summary judgment and in denying Admiral's
motion for summary judgment because the allegations in the cardiologists' lawsuit fell outside the scope of the policy's
coverage provisions. RGH argues that the cardiologists' petition triggered Admiral's duty to defend under the provisions of
the policy covering managed health care.

 The policy provides that Admiral 

will pay those sums that the insured becomes legally obligated to pay as "damages" because of a "wrongful act" in the
"policy territory", arising out of your "managed health care" services to which this insurance applies. [Admiral] will have
the right and duty to defend any "suit" seeking those "damages."



Under the definitions section of the policy, "wrongful act" is defined as any actual or alleged error or omission, negligent
act, misstatement or misleading statement, or breach of duty. The definition of "managed health care" includes "sales and
marketing of health care services;" "evaluating for payment and processing of health care claims;" and "providing records
and data processing relating to services offered."

Application of the Eight Corners Rule

 The cardiologists' petition alleges facts within the scope of the policy. According to the petition, RGH made misstatements
or misleading statements which caused the cardiologists harm. These representations included statements concerning the
sales and marketing of health care services and the accurate and timely provision of detailed accountings to the
cardiologists. Assuming the factual allegations in the petition to be true, the cardiologists' suit constitutes a claim for
damages caused by wrongful acts on the part of RGH, arising out of RGH's managed health care services. Issue number one
is overruled.

The Policy Exclusions

 With its second issue, Admiral argues that the trial court erred by granting RGH's motion for summary judgment, and
denying Admiral's motion because the claims raised by the cardiologists are excluded by the policy and, therefore, Admiral
has no duty to defend RGH in the suit. Admiral argued that the exclusions pertaining to employment, breach of contract,
and fraudulent acts preclude coverage.

 The supreme court has held that:

[g]enerally, a contract of insurance is subject to the same rules of construction as other contracts. If the written instrument
is worded so that it can be given only one reasonable construction, it will be enforced as written. However, if a contract of
insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the
construction that most favors the insured. The court must adopt the construction of an exclusionary clause urged by the
insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more
reasonable or a more accurate reflection of the parties' intent. In particular, exceptions or limitations on liability are strictly
construed against the insurer and in favor of the insured. 

National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)(citations
omitted). Our inquiry is whether the construction advanced by RGH is a reasonable interpretation. Id.

 The policy states that it does not apply to any "'claim' for liability assumed by [RGH] under any contract or agreement,
either oral or written, unless such liability would have attached to [RGH] even in the absence of such contract or
agreement." RGH responds by pointing out that the cardiologists' petition includes claims for breach of a duty of good faith
and negligent misrepresentation. The petition states that a duty of good faith arose from the special relationship between
the cardiologists and RGH, and that RGH breached that duty. This duty would have arisen even absent a contract between
the cardiologists and RGH. The cardiologists also alleged that RGH made representations about the conditions under
which the cardiologists would work, without taking the proper level of care to insure the accuracy of the representations, or
the ability of RGH to provide the conditions promised. These allegations raise claims not subject to the exclusions for
breach of contract.

 The policy also states that it does not apply to claims "arising out of, or contributed to by the dishonest, fraudulent, or
malicious act or omission of [RGH]." As discussed above, the cardiologists raise claims under theories of negligent
misrepresentation, as distinguished from intentional conduct, as dishonest, fraudulent, or malicious acts or omissions. This
exclusion does not bar coverage.

 Finally, Admiral contends that the policy contains an employment exclusion which negates the duty to defend. The policy
excludes claims arising out of "employment-related practices, policies, acts or omissions, such as coercion, demotion,
evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination." As RGH argues, none of the
specific actions listed in this exclusion are raised by the cardiologists in the underlying suit. 

 Further, although the cardiologists' petition includes language to the effect that the cardiologists were employees of RGH,
there is also language to the effect that the cardiologists were not employees, but rather were involved in a partnership with
RGH. Reading the petition liberally in favor of RGH, the petition could be seen as raising a claim of a breach of duty to the
cardiologists as partners of RGH, not employees. Once coverage is found for any portion of a suit, an insurer must defend
the entire suit. St. Paul Ins. Co. v. Texas Dept. of Transp., 999 S.W.2d 881, 887 (Tex. App.-Austin 1999, pet. denied). If
coverage is found for any portion of a suit, an insurer is not relieved of its duty to defend because coverage may not be
available for some of the causes pleaded. Id. Thus, because the exclusion would not apply to the petition if the
cardiologists were partners, and not employees, Admiral has a duty to defend RGH in the underlying suit. Issue number
two is overruled.

Equitable Remedies and Punitive Damages

 In its third issue, Admiral argues that it has no duty to defend because the damages sought by the cardiologists in the
underlying suit are not included in the definition of damages. The cardiologists' petition requests injunctive relief, actual
and special damages, exemplary damages, reasonable attorney's fees, court costs, prejudgment and post-judgment interest,
an accounting, and "general relief." The definition of damages in the policy explicitly defines damages as "a monetary
judgment, award or settlement." The definition of damages further states that damages does not include punitive or
exemplary damages. Admiral also cites Feed Store, Inc., v. Reliance Ins. Co., 774 S.W.2d 73, 74 (Tex. App.-Houston
[14th Dist.] 1989, writ denied) for the proposition that, under Texas law, the term "damages" does not include equitable
relief.

 Even assuming arguendo that a duty to defend would not arise if the only relief sought by the cardiologists was injunctive
relief and punitive damages, the cardiologists also seek damages which are covered by the policy. Admiral is required to
provide a defense for its insured for the entire suit, once coverage has been found for any portion of the suit. St. Paul Ins.
Co., 999 S.W.2d at 884. Because Admiral is obligated to provide a defense as to the actual damages alleged by the
cardiologists, it may not avoid its obligation by pointing to damages for which it may not have a duty to indemnify. Issue
number three is overruled.

The Motion for New Trial

 In its final issue, Admiral argues that the trial court erred in denying Admiral's motion for new trial, which was based on an
amended petition in the underlying suit. Admiral argues that in their third amended petition, the cardiologists dropped their
negligence-based claims, retaining only their claims for intentional torts. 

 A trial court has broad discretion to deny a motion for new trial, and this denial will not be disturbed on appeal absent an
abuse of that discretion. Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex.1984); GXG, Inc. v. Texacal Oil & Gas, 977
S.W.2d 403, 412 (Tex. App.-Corpus Christi 1998, pet. denied). An appellate court may reverse a trial court for abuse of
discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. Simon
v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex.1987); GXG, Inc., 977 S.W.2d at 412.

 In the instant case, Admiral filed a declaratory judgment suit, and subsequent motion for summary judgment, based on the
cardiologists' first amended original petition. The trial court accordingly ruled on the summary judgments based on the
evidence brought to the court by Admiral. Admiral sought a judgment pertaining to the cardiologists' first amended
original petition. Subsequent petitions may affect Admiral's duty to defend; however, subsequent petitions were not the
subject of Admiral's declaratory judgment action. Admiral filed an action to determine its duty to defend under the first
amended original petition, and the trial court ruled on that issue. We cannot say that a trial court abused its discretion by
not granting a new trial based on amendments to the petition following the trial court's consideration of dispositive motions
in the duty to defend case. Issue number four is overruled.

 The judgment of the trial court is AFFIRMED. 

 

LINDA REYNA YAÑEZ

Justice


Publish. Tex. R. App. P. 47.3.

Opinion delivered and filed this the

15th day of November, 2001.

1. For the sake of clarity, the cardiologist plaintiffs in the underlying suit will be referred to as "the cardiologists"
throughout this opinion. 

2. Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon 1997 & Supp. 2001).