ADMIRAL INSURANCE COMPANY, Appellant,

v.

RIO GRANDE HEART SPECIALISTS OF SOUTH TEXAS, INC., Appellee.

No. 13–00–552–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 15, 2001.

Rehearing Overruled Jan. 24, 2002.

Marvin C. Moos, Nathan M. Rymer, David Clay Wilkerson, Debra E. Ibarra, Smith, Rymer, Moore & Moos, Houston, for appellant.

Jeffrey S. Osgood, P. Michael Jung, Toni Scott Reed, Strasburger & Price, for appellee.

Before Justices DORSEY, YAÑEZ, and RODRIGUEZ.

## OPINION

YAÑEZ, Justice.

This appeal is brought by Admiral Insurance Company ("Admiral") to challenge the decision by the trial court to deny a summary judgment filed by Admiral and grant summary judgment in favor of appellee, Rio Grande Heart Specialists of South Texas ("RGH"). We affirm.

## Factual and Procedural History

The litigation which produced this appeal arose from a lawsuit filed by two cardiologists against RGH.[1] The cardiologists alleged that they had been enticed to work for RGH, abandoning their successful practices at The Heart Clinic, a consortium of cardiologists. After coming to RGH, the cardiologists became convinced that RGH was not operating its facility as promised, and filed suit against RGH. RGH had an insurance contract with Admiral, and made a demand that Admiral provide a defense against the cardiologists' suit.

Admiral filed suit under the Uniform Declaratory Judgment Act[2] alleging that it had no duty to defend RGH against the cardiologists' lawsuit. Admiral filed a motion for summary judgment in the declaratory judgment case, based on the cardiologists' first amended original petition in the underlying suit. RGH also filed a motion for summary judgment, also based on the first amended original petition in the underlying suit. The trial court denied Admiral's motion and granted RGH's. Admiral now appeals, arguing that the trial court erred by denying its summary judgment motion and granting RGH's summary judgment motion.

Admiral raises four issues on appeal, arguing: 1) that the allegations raised in the underlying suit fall outside the scope of the insurance policy with RGH; 2) exclusions in the policy unambiguously exclude the claims in the underlying suit from coverage; 3) the underlying suit requests equitable remedies not encompassed within the insurance policy's definition of damages; and 4) petitions filed in the underlying suit, subsequent to the granting of summary judgment in the instant case, did not include any negligence-based claims, and, therefore, the trial court should have granted a new trial for Admiral on the issue of coverage.

## Standard of Review

A summary judgment movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.,* 33 S.W.3d 102, 104 (Tex.App.Corpus Christi 2000, pet. denied). Where the only question presented to the trial court was a question of law and both sides moved for summary judgment, the appellate court should render the judgment that the trial court should have rendered. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988); *Bradleys' Elec., Inc.,* 33 S.W.3d at 104; *The Cadle Co. v. Butler,* 951 S.W.2d 901, 905 (Tex. App.-Corpus Christi 1997, no writ).

## Duty to Defend

An insurer's duty to defend is determined by comparing the factual allegations in the pleadings to the language of the insurance policy. *National Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997); *Bradleys' Elec., Inc.,* 33 S.W.3d at 104. This is often referred to as the "eight corners" rule because the inquiry is limited to the four corners of the insurance policy and the four corners of the plaintiff's petition. *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *Bradleys' Elec., Inc.,* 33 S.W.3d at 104. If a petition does not allege facts

1. For the sake of clarity, the cardiologist plaintiffs in the underlying suit will be referred to as "the cardiologists" throughout this opinion.

2. TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp.2001).

within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 848 (Tex.1994); *Bradleys' Elec., Inc.,* 33 S.W.3d at 104. When applying the eight corners rule, if the appellate court finds the policy is vague, it construes the policy against the insurer in favor of finding a duty to defend. *Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d 153, 155 (Tex.App.-Houston [1st Dist.] 1990, writ denied).

▆▆▆ When deciding if a duty to defend exists, appellate courts assume the facts in the plaintiff's petition are true, and determine if the claims fall within the limits of the policy. *Id.* The factual allegations within a petition are liberally interpreted when determining if a petition alleges facts that potentially state a claim within the coverage of a policy. *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *Bradleys' Elec., Inc.,* 33 S.W.3d at 104. Any doubt as to whether the allegations state a cause of action within the coverage of the policy is resolved in the insured's favor. *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *Bradleys' Elec., Inc.,* 33 S.W.3d at 104. The focus of the inquiry is on the facts alleged, not the legal theories alleged. *National Union Fire Ins. Co. of Pittsburgh,* 939 S.W.2d at 141; *Bradleys' Elec., Inc.,* 33 S.W.3d at 104.

### The Petition in the Underlying Suit

The cardiologists raised several allegations. According to their petition, RGH made a number of representations to the cardiologists, designed to induce the cardiologists to leave their existing practice at The Heart Clinic, and practice at RGH instead. According to their petition, the cardiologists relied upon RGH's representations, left their own practice, and "began a new practice in partnership with [RGH]." The cardiologists accused RGH of having created a "sham" corporation, which was used to negotiate employment contracts, and then employ, the cardiologists. The cardiologists accuse RGH of misleading them, either intentionally or negligently, into working in RGH's cardiology program and then engaging in wrongful conduct to deprive the cardiologists of money. In the alternative, the cardiologists allege that RGH was negligent in making promises to the cardiologists then failed to exercise reasonable care in obtaining information for, or communicating information to, the cardiologists, resulting in harm to the cardiologists.

### The Scope of the Insurance Policy

In its first issue, Admiral argues that the trial court erred in granting RGH's summary judgment and in denying Admiral's motion for summary judgment because the allegations in the cardiologists' lawsuit fell outside the scope of the policy's coverage provisions. RGH argues that the cardiologists' petition triggered Admiral's duty to defend under the provisions of the policy covering managed health care.

> The policy provides that Admiral
> will pay those sums that the insured becomes legally obligated to pay as "damages" because of a "wrongful act" in the "policy territory", arising out of your "managed health care" services to which this insurance applies. [Admiral] will have the right and duty to defend any "suit" seeking those "damages."

Under the definitions section of the policy, "wrongful act" is defined as any actual or alleged error or omission, negligent act, misstatement or misleading statement, or breach of duty. The definition of "managed health care" includes "sales and marketing of health care services;" "evaluating

for payment and processing of health care claims;" and "providing records and data processing relating to services offered."

### Application of the Eight Corners Rule

■ The cardiologists' petition alleges facts within the scope of the policy. According to the petition, RGH made misstatements or misleading statements which caused the cardiologists harm. These representations included statements concerning the sales and marketing of health care services and the accurate and timely provision of detailed accountings to the cardiologists. Assuming the factual allegations in the petition to be true, the cardiologists' suit constitutes a claim for damages caused by wrongful acts on the part of RGH, arising out of RGH's managed health care services. Issue number one is overruled.

### The Policy Exclusions

■ With its second issue, Admiral argues that the trial court erred by granting RGH's motion for summary judgment, and denying Admiral's motion because the claims raised by the cardiologists are excluded by the policy and, therefore, Admiral has no duty to defend RGH in the suit. Admiral argued that the exclusions pertaining to employment, breach of contract, and fraudulent acts preclude coverage.

■ The supreme court has held that: [g]enerally, a contract of insurance is subject to the same rules of construction as other contracts. If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written. However, if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured. The court must adopt the construction of an exclusionary clause urged by the insured as long as

that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. In particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991) (citations omitted). Our inquiry is whether the construction advanced by RGH is a reasonable interpretation. *Id.*

The policy states that it does not apply to any " 'claim' for liability assumed by [RGH] under any contract or agreement, either oral or written, unless such liability would have attached to [RGH] even in the absence of such contract or agreement." RGH responds by pointing out that the cardiologists' petition includes claims for breach of a duty of good faith and negligent misrepresentation. The petition states that a duty of good faith arose from the special relationship between the cardiologists and RGH, and that RGH breached that duty. This duty would have arisen even absent a contract between the cardiologists and RGH. The cardiologists also alleged that RGH made representations about the conditions under which the cardiologists would work, without taking the proper level of care to insure the accuracy of the representations, or the ability of RGH to provide the conditions promised. These allegations raise claims not subject to the exclusions for breach of contract.

The policy also states that it does not apply to claims "arising out of, or contributed to by the dishonest, fraudulent, or malicious act or omission of [RGH]." As discussed above, the cardiologists raise claims under theories of negligent misrepresentation, as distinguished from intentional conduct, as dishonest, fraudulent, or

malicious acts or omissions. This exclusion does not bar coverage.

Finally, Admiral contends that the policy contains an employment exclusion which negates the duty to defend. The policy excludes claims arising out of "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination." As RGH argues, none of the specific actions listed in this exclusion are raised by the cardiologists in the underlying suit.

Further, although the cardiologists' petition includes language to the effect that the cardiologists were employees of RGH, there is also language to the effect that the cardiologists were not employees, but rather were involved in a partnership with RGH. Reading the petition liberally in favor of RGH, the petition could be seen as raising a claim of a breach of duty to the cardiologists as partners of RGH, not employees.

■■■■ Once coverage is found for any portion of a suit, an insurer must defend the entire suit. *St. Paul Ins. Co. v. Texas Dept. of Transp.*, 999 S.W.2d 881, 887 (Tex. App.-Austin 1999, pet. denied). If coverage is found for any portion of a suit, an insurer is not relieved of its duty to defend because coverage may not be available for some of the causes pleaded. *Id.* Thus, because the exclusion would not apply to the petition if the cardiologists were partners, and not employees, Admiral has a duty to defend RGH in the underlying suit. Issue number two is overruled.

### Equitable Remedies and Punitive Damages

■■■ In its third issue, Admiral argues that it has no duty to defend because the damages sought by the cardiologists in the underlying suit are not included in the definition of damages. The cardiologists' petition requests injunctive relief, actual and special damages, exemplary damages, reasonable attorney's fees, court costs, prejudgment and post-judgment interest, an accounting, and "general relief." The definition of damages in the policy explicitly defines damages as "a monetary judgment, award or settlement." The definition of damages further states that damages does not include punitive or exemplary damages. Admiral also cites *Feed Store, Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73, 74 (Tex.App.-Houston [14th Dist.] 1989, writ denied) for the proposition that, under Texas law, the term "damages" does not include equitable relief.

Even assuming *arguendo* that a duty to defend would not arise if the only relief sought by the cardiologists was injunctive relief and punitive damages, the cardiologists also seek damages which are covered by the policy. Admiral is required to provide a defense for its insured for the entire suit, once coverage has been found for any portion of the suit. *St. Paul Ins. Co.*, 999 S.W.2d at 884. Because Admiral is obligated to provide a defense as to the actual damages alleged by the cardiologists, it may not avoid its obligation by pointing to damages for which it may not have a duty to indemnify. Issue number three is overruled.

### The Motion for New Trial

In its final issue, Admiral argues that the trial court erred in denying Admiral's motion for new trial, which was based on an amended petition in the underlying suit. Admiral argues that in their third amended petition, the cardiologists dropped their negligence-based claims, retaining only their claims for intentional torts.

**504**

A trial court has broad discretion to deny a motion for new trial, and this denial will not be disturbed on appeal absent an abuse of that discretion. *Strackbein v. Prewitt,* 671 S.W.2d 37, 38 (Tex.1984); *GXG, Inc. v. Texacal Oil & Gas,* 977 S.W.2d 403, 412 (Tex.App.-Corpus Christi 1998, pet. denied). An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it is clear that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.,* 739 S.W.2d 793, 795 (Tex.1987); *GXG, Inc.,* 977 S.W.2d at 412.

In the instant case, Admiral filed a declaratory judgment suit, and subsequent motion for summary judgment, based on the cardiologists' first amended original petition. The trial court accordingly ruled on the summary judgments based on the evidence brought to the court by Admiral. Admiral sought a judgment pertaining to the cardiologists' first amended original petition. Subsequent petitions may affect Admiral's duty to defend; however, subsequent petitions were not the subject of Admiral's declaratory judgment action. Admiral filed an action to determine its duty to defend under the first amended original petition, and the trial court ruled on that issue. We cannot say that a trial court abused its discretion by not granting a new trial based on amendments to the petition following the trial court's consideration of dispositive motions in the duty to defend case. Issue number four is overruled.

The judgment of the trial court is AFFIRMED.