IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-10510
_____


ANDREWS TRANSPORT, INC.,

                                        Plaintiff-Appellant,

versus

CNA REINSURANCE COMPANY, LTD.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for
the Northern District of Texas
(USDC No. 4:99-CV-1023-E)
_____
April 22, 2002


Before KING, Chief Judge, REAVLEY and WIENER, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Andrews Transport appeals the district court's summary

judgment decision in favor of CNA Reinsurance, which held that CNA did not have a

duty to defend Andrews against a lawsuit filed by drivers who worked for Andrews.  For

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion
should not be published and is not precedent except under the limited circumstances
set forth in 5TH CIR. R. 47.5.4.

the reasons that follow, we reverse.

*A.* *Claimant*

First, with respect to CNA's argument that the duty to defend could not have arisen under the original petition or First Amended Complaint because Bridges was not a "Claimant," we find that in both pleadings Bridges alleged potential claims as an employee. A "Claimant" whose claims are covered by the policy[1] "means a current or former Employee, an applicant for employment with an insured entity, or the [EEOC] or a similar state or federal agency acting on behalf of such current or former Employee or applicant for employment." "Employee" is also a defined term, which means:

> an individual whose labor or service is engaged by and directed by an insured entity. This includes but is not limited to part-time, seasonal, volunteer, temporary and leased Employees as well as any individual employed in a supervisory, managerial or confidential position. Independent contractors who claim to be an Employee of an insured entity will be Claimants but only with respect to the conduct of any insured entity's business.

In his original pleadings, Bridges repeatedly and emphatically characterized the drivers as independent contractors and not employees, using those terms with reference to the obligations Andrews Transport had to withhold money for taxes and unemployment insurance from their paychecks. Because Bridges alleged improper withholdings which

---

[1] Interestingly, the duty to defend clause of the policy does not appear to depend on the claim having been filed by a "claimant." Only the duty to indemnify is conditioned on loss amounts incurred "on account of a Claim by a Claimant." Andrews has not made this argument, however.

depended in part on the drivers' status as independent contractors, he even stated in all capital type that the money they earned was "NEVER AS EMPLOYEES."

However, the original petition also alleged that, "even if Plaintiffs were to be considered employees of Defendants, they would still not owe SUTA taxes." The petition further stated that "the unlawful character of the Defendant's taking of monies from the compensation rightfully due the Plaintiffs is additionally demonstrated by the continued and unending act of such taking beyond the point where the governing statutes command a stop to even an employer's tax liabilty." The SUTA deductions and allegedly excessive FUTA deductions, claimed as wrongful either as to independent contractors or to employees, were components of damages in all of the plaintiff truck drivers' causes of action. Although the primary legal theory was that the drivers were independent contractors from whom taxes and unemployment insurance assessments were wrongfully withheld, the pleadings in the original petition left them room to proceed as employees on some claims.

In Superior Insurance Co. v. Jenkins,[2] one court of appeals explained that pleadings made in the alternative can trigger the duty to defend.[3] In Superior Insurance, the underlying plaintiff had sued the insured claiming intentional torts of assault and

---

[2] 358 S.W.2d 243 (Tex.App.–Eastland 1962, writ ref'd n.r.e.).

[3] See also Rhodes v. Chicago Ins. Co., 719 F.2d 116, 119 (5th Cir. 1983) ("Whether a complaint pleads in the alternative or alleges more than one cause of action, the insurer is obligated to defend, as long as the complaint alleges at least one cause of action within the coverage of the policy.").

battery, or in the alternative that the insured's actions were the negligent cause of the plaintiff's injury.[4] The insurance policy expressly excluded coverage for bodily injury "caused intentionally" by the insured, but covered injuries resulting from negligence.[5] The court determined that if it eliminated all of the pleadings from the original complaint relating to the intentional allegations, the complaint still alleged facts against the insured falling within the terms of the policy, thus triggering the duty to defend.[6]

Applying the approach used in Superior Insurance, if we separate out the statements and allegations in the original petition relating to the drivers' status as independent contractors, there would still be a set of facts and allegations under which the drivers were claiming to be employees who had been wronged by their employer so that they could proceed with their suit under the employee banner. At the very least, "the complaint does not state facts sufficient to clearly bring the case within or without the coverage,"[7] and by virtue of the original petition's alternative reference to illegality even as to employees, we believe that there is, "potentially, a case under the complaint within

---

[4] Superior Ins. Co., 358 S.W.2d at 244.

[5] Id.

[6] Id.

[7] National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997) (quoting Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965)).

4

the coverage of the policy."[8]

Accordingly, the district court erred as a matter of law in concluding that CNA properly denied its duty to defend against the original state court petition and First Amended Complaint on the grounds that the drivers were not claimants.

## B. *Claims for an Insured Event*

We also conclude that Bridges alleged an "insured event" within the meaning of the policy under each of his pleadings. The insurance policy provides, "Underwriters have the right and duty to defend any Claim for an Insured Event made or brought against any Insured to which this policy applies, even if the allegations are groundless, false or fraudulent." An "Insured Event" means "actual or alleged acts of Discrimination, Harassment, Negligent Hiring, and/or Wrongful Employment Decisions, by an Insured . . . ." The parties agree that only "Wrongful Employment Decisions" are possibly at issue in this case. The policy further defines this phrase to mean:

> 1. termination, actual or constructive, of an employment relationship in any manner which is against the law and wrongful;
> 2. allegations of wrongful demotion, retaliation, misrepresentation, promissory estoppel and, intentional interference with contract; which arise from an employment decision to employ, terminate, evaluate, discipline, promote or demote;
>  . . .
> 4. allegations of breach of an implied employment contract and breach of the

---

[8] Id.

covenant of good faith and fair dealing in the employment contract;
5. employment terminations, disciplinary actions, demotions or other employment decisions which violate public policy or the Family Medical Leave Act or similar state law.

. . .

We believe that Bridges' original petition contains specific charges of employment decisions "which violate public policy." [9] The petition alleges, *inter alia*, that Andrews Transport withheld money from the drivers' paychecks in violation of Texas Labor Code § 204.003, which provides that "[a]n employer may not deduct any part of a contribution [to the Texas unemployment compensation fund] from the wages of an individual in the employer's employ."

The alleged violation of section 204.003 constitutes an employment decision which violates public policy. Texas "expresses its public policy in its statutes."[10] In Lawrence v. CDB Services, Inc., a case involving whether a contract was void for having violated public policy, the Texas Supreme Court discussed what constitutes a "public

---

[9] We view "which violate public policy" as a descriptive phrase modifying "employment decisions." Although we are mindful of the Texas rule that only pleaded facts, not legal theories, serve as the basis of duty to defend analysis, in this case the parties have used a phrase with some legal significance to describe the type of facts that trigger the duty to defend. Whether something "violates public policy" necessarily requires some legal analysis and cannot be resolved merely by reference to the facts in the complaint.

[10] Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 555 (Tex. 2001) (Baker, J., dissenting); South Texas College of Law v. Texas Higher Educ. Coordinating Bd., 40 S.W.3d 130, 135 (Tex.App.–Austin 2000, writ denied); see also Stubbs v. Ortega, 977 S.W.2d 718, 722 (Tex.App.–Fort Worth 1998, writ denied) ("[W]e look to the state's statutes and judicial decisions for expressions of public policy.").

policy" violation:

> Public policy, some courts have said, is a term of vague and uncertain meaning, which it pertains to the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law.[11]

In the present case, we are confronted with allegations that the employer violated the clear terms of a positive statute. Under Texas law, statutes are legislative expressions of public policy.

We see no warrant for the argument, accepted by the district court, that an "insured event" triggering the duty to defend only arises if there is a viable legal theory of recovery for that event. That reasoning is inconsistent with the Texas rule that the proper focus is on the "factual allegations that show the origin of the damages rather than on the legal theories alleged."[12] Whether there is or is not a private right of action to recover SUTA contributions unlawfully deducted from the employee's compensation, the underlying complaint alleged employment decisions that violate public policy. That is all the insurance policy requires.

---

[11] Lawrence, 44 S.W.3d at 553 (quoting Sherrill v. Union Lumber Co., 207 S.W. 149, 153-54 (Tex.App.–Beaumont 1918, no writ)).

[12] St. Paul Ins. Co. v. Texas Dep't. of Transportation, 999 S.W.2d 881, 884 (Tex.App.–Austin 1999, writ denied); see also Cornhill Ins. PLC v. Valsamis, Inc., 106 F.3d 80, 85 (5th Cir. 1997) (citing Adamo v. State Farm Lloyds Co., 853 S.W.2d 673 (Tex.App.–Houston [14th Dist.] 1993, writ denied)). We have found no case in which the equivalent to a Rule 12(b)(6) standard was applied to a legal theory to determine whether the duty to defend was triggered.

7

We also see no basis in the policy language for CNA's argument that Bridges' petition would only fall within the scope of coverage under the policy if it had alleged a claim for wrongful discharge in violation of public policy. This argument seems to rest on an implicit assumption that the phrase "employment decision" means "discharge." Given the language used in paragraph 8, "employment *terminations*, disciplinary actions, demotions *or other employment decisions*," (emphasis added) and given the wide range of conduct discussed under the overall heading of "wrongful employment decisions," we cannot interpret "employment decision" to mean only an ultimate employment decision like a discharge.

Finally, we consider CNA's argument that "violates public policy" should not encompass all employment decisions that "violate the law," because this would render superfluous the separate section of the insurance contract discussing coverage of discrimination events since discrimination violates the law.[13] We agree that a broad reading of "employment decisions which violate public policy" creates substantial overlap with the category of conduct described in the section on "Discrimination,"

_____

[13] A covered "Claim" includes a complaint where "specific charges of Discrimination, Harassment, Negligent Hiring and/or Wrongful Employment Decisions are made." Discrimination "means termination of the employment relationship, a demotion or failure or refusal to hire or promote or denial of an employment benefit or the taking of any adverse or differential employment action including but not limited to retaliation because of race, color, religion, age, sex, sexual orientation, sexual preference, disability (including AIDS), pregnancy or national origin, or any other basis prohibited by federal, state or local law."

8

although it would not wholly displace it.[14]  This overlap does not dictate a narrower reading of "public policy" for two reasons.

First, other categories of conduct (aside from "which violate public policy") listed under "Wrongful Employment Decisions" appear to overlap with claims that would fall under the category of discrimination, so we cannot conclude that these categories were intended to be discrete.  For example:

- paragraph 8 provides coverage against allegations of retaliation against any Insured, "including but not limited to retaliation for filing claims under the Federal False Claims Act, retaliation in connection with whistle blowing, retaliation for union activities or in connection with strikes or lockouts";

- paragraph 9 covers "allegations of wrongful deprivation of career opportunity or failure to grant tenure"; and

- paragraph 2 covers allegations of "wrongful demotion, retaliation, misrepresentation . . . which arise from an employment decision to employ, terminate, evaluate, discipline, promote or demote."

These paragraphs appear to have substantial overlap not only with each other, but also with the categories of conduct described under the section of the policy discussing discrimination claims.

---

[14] For example, the discrimination section may cover claims relating to "sexual orientation" and "sexual preference," although Texas statutes do not prohibit employment discrimination on those bases.

Second, CNA has presented us with no counter-definition that would allow us to impose some other construction on the meaning of the phrase "violate public policy." CNA's position does not appear to be that *no* violations of statutory law fall within the category of public policy violations, and CNA provides us with no basis grounded in the language of the insurance policy or in the case law for drawing a line between one statutory violation and another. The policy's language, as opposed to CNA's assertions about the clause's purpose, provides no justification for a more restrictive reading.

Given the vagueness of the phrase "employment decisions which violate public policy," the lack of a specific definition in the insurance policy, and our duty to construe insurance policies against the insurer in the event of uncertainty, we conclude that Bridges' allegation that Andrews withheld money to compensate for SUTA contributions in direct contravention of a Texas statute qualifies as an allegation of an employment decision which violates public policy.

For the purposes of this appeal we need not address whether the drivers' other allegations are insured events under the policy. The duty to defend is triggered if any portion of the complaint falls within the scope of the policy.[15]

*C.* *Loss*

---

[15] <u>Admiral Ins. Co. v. Rio Grande Heart Specialists of S. Tex., Inc.</u>, 64 S.W.3d 497, 503 (Tex.App.–Corpus Christi 2001); <u>Canutillo Sch. Dist. v. Nat'l Union Fire Ins. Co.</u>, 99 F.3d 695, 701 (5th Cir. 1996).

CNA's argument that the duty to defend is not triggered because Bridges seeks wrongfully withheld taxes rather than covered "losses" addresses the duty to indemnify and not the duty to defend. It provides no basis to affirm the district court's judgment.

Reversed and Remanded.