Revised May 9, 2001

**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 00-10237

_____

ST. PAUL FIRE & MARINE INSURANCE COMPANY;
ST. PAUL MERCURY INSURANCE GROUP,

Plaintiffs-Appellants,

VERSUS

GREEN TREE FINANCIAL CORP.-TEXAS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

April 23, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Plaintiff-Appellant St. Paul Fire & Marine Insurance Company ("St. Paul") argues that the district court erred by entering summary judgment in favor of Green Tree Financial Corp.-Texas ("Green Tree"). The court concluded that St. Paul had a duty to defend Green Tree in a suit involving Green Tree's debt collection

1

practices.[1]  We must determine whether the allegations against Green Tree potentially state a cause of action covered under St. Paul's commercial insurance policies.

## I.  Facts

On April 1, 1993, Green Tree filed suit against Sylvia Lazo and Eduardo Saenz to collect a debt that Lazo and Saenz owed after purchasing a mobile home.  Eduardo Saenz and Sylvia Corona, the occupants of the mobile home, asserted counterclaims against Green Tree for wrongful debt collection practices, for breach of a retail installment contract, and for misrepresentations and breach of warranties.  The claimants alleged that Green Tree made frequent rude and abusive telephone calls from 1986 to 1993 in an attempt to collect the debt.  On October 25, 1993, Green Tree notified St. Paul of the counterclaims.[2]

St. Paul assumed Green Tree's litigation expenses, but reserved its rights to contest coverage.[3]  In February of 1995, St.

---

[1]The district court asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332.  This Court has appellate jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

[2]The claimants' factual allegations remained essentially unchanged as to each of the amendments beginning with the fourth amended counterclaim, filed on October 22, 1993, and ending with the defendants' eleventh amended counterclaim, dated January 17, 1995.

[3]An insurance company may also reserve its rights to recoup its costs of defense as long as the insurer specifically notifies the insured of its intent to collect the defense costs in a reservation of rights letter.  *See Matagorda County v. Texas Ass'n of Counties County Gov't Risk Mgmt. Pool*, 975 S.W.2d 782, 785 (Tex. App.-- Chorpus Christi 1998, writ granted), *aff'd*, 44 Tex. Sup. Ct. J.

Paul settled with Saenz and Corona over Green Tree's objection. St. Paul filed for declaratory relief in federal district court asserting that it had no duty to defend or indemnify Green Tree. The district court, in two orders granting Green Tree's motions for summary judgment, held that St. Paul had a duty to defend Green Tree under either the personal injury or bodily injury provisions of the general commercial liability policies in effect at the time of the alleged wrongful acts.

## II. Analysis

We review a district court's order granting summary judgment de novo. *See Guaranty Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 242 (5th Cir. 2000). Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Canutillo Indep. School Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996).

### A. The Duty to Defend Under Texas Law

Texas courts enforce an insurer's duty to defend even when an insurer's duty to indemnify is not yet settled. *See St. Paul Ins. Co.*, 999 S.W.2d at 887. An insurance company's duty to defend is broader than its duty to indemnify. *See St. Paul Ins. Co. v. Texas*

215, 2000 WL 1867945 (Dec. 21, 2000). The litigants stipulated that if St. Paul succeeds in this appeal, Green Tree will be liable for the costs of defense.

*Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App.--Austin 1999, writ denied).  If coverage exists for any portion of a suit, the insurer must defend the insured in the entire suit.  *See id.*

Texas courts apply the "eight corners" or "complaint allegation" rule to determine whether an insurer has a duty to defend.  *See Potomac Ins. Co. of Illinois v. Jayhawk Medical Acceptance Corp.*, 198 F.3d 548, 551 (5th Cir. 2000).  Under the "eight corners" rule, courts must first look to the factual allegations in the pleadings to ascertain whether the alleged conduct potentially requires coverage.  *St. Paul Ins. Co.*, 999 S.W.2d at 884.

> [A]n insurer's contractual duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings.  The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy.

*Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex. App.--Houston [1st Dist.] 1990, writ denied)(citations omitted).  The focus of this inquiry is on the facts alleged, not on the actual legal theories.  *See Maayeh v. Trinity Lloyds Ins. Co.*, 850 S.W.2d 193, 195 (Tex. App.--Dallas 1992, no writ).  "Where the complaint does not state facts sufficient to clearly bring the case within or without coverage, the general rule is that the

4

insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The factual allegations in a third party's complaint must be liberally construed in favor of the insured. *See Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 272 (Tex. App.–-Dallas 1992, writ denied).

After assessing the potential causes of action in the pleadings, courts must determine whether the policy covers the alleged conduct. Any ambiguity in an insurance policy is resolved in favor of the insured. *See National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 554 (Tex. 1991). If the terms of the policy are not ambiguous, then the words must be given their plain meaning. *See Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). "Language in insurance provisions is only ambiguous if the court is uncertain as to which of two or more meanings was intended." *Houston Petroleum Co.*, 830 S.W.2d at 155. "If multiple interpretations are reasonable, the court must construe the contract against the insurer . . .." *Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 769 (5th Cir. 1999).

B. The Factual allegations Against Green Tree

The relevant facts set out in Carona and Saenz' eleventh amended counterclaim are as follows:

5

> . . . The debt collection activities of which Sylvia Corona and Eduardo Saenz complain include frequent calls to the homes and workplaces of Sylvia Corona, Eduardo Saenz, and their families during 1986, 1987, 1988, 1989, 1990, 1991, 1992, and 1993, using abusive and rude language. The calls were as frequent as three or more times per week. Many times the callers threatened to inform the employers of Sylvia Corona and Eduardo Saenz that they were trying to collect a debt from Sylvia Corona and Eduardo Saenz. The callers told Eduardo Saenz' mother that her son was delinquent in his payments on a debt to GREEN TREE. The calls continued even after Sylvia Corona and Eduardo Saenz and his mother told GREEN TREE that the calls were making them sick and causing them extreme mental anguish. On at least one occasion GREEN TREE called and said they were going to go out to the land and pick up the trailer while nobody was at home.

Corona and Saenz pleaded causes of action for negligence, statutory and common law unfair debt collection practices, and claims under the Deceptive Trade Practices Act. The pleadings requested actual damages, costs, and any other relief to which the claimants were legally entitled.

### C. The General Commercial Liability Policies

Green Tree was insured under numerous policies with St. Paul during the eight years during which the alleged conduct occurred. With a few exceptions, the language in the policies remained the same.

*ST. PAUL COMMERCIAL GENERAL LIABILITY POLICY CK06303193: JUNE 30, 1989 THROUGH JUNE 30, 1990*

**What This Agreement Covers**

**Personal injury and advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered personal injury or advertising injury that's caused by an offense committed while this

6

agreement is in effect.

*Personal Injury* means injury, other than bodily injury, caused by any of the following offenses that result from your business activities, other than advertising, broadcasting, publishing or telecasting done by of for you:
-false arrest, detention, or imprisonment;
-malicious prosecution;
-wrongful entry or wrongful eviction;
-libel or slander;
-written or spoken material made public which belittles the products or work of others;
-written or spoken material made public which violates an individual's right of privacy.

**Right and duty to defend.** We'll have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person . . ..

*Claim* means a demand in which damages are alleged.

*Suit* means a civil proceeding in which damages are alleged. And it includes an arbitration proceeding for such damages to which you must submit or submit with our consent.

*Injury or damage* means bodily injury, personal injury, advertising injury or property damage or fire damage.

## Exclusions - What This Agreement Won't Cover

**Deliberately breaking the law.** We won't cover personal injury or advertising injury that results if the protected person knowingly breaks any criminal law.

Green Tree was also covered under an Umbrella Policy with St. Paul through June of 1987. The Umbrella Policy contains the same language as the above policy with two relevant exceptions. First, the Umbrella Policy does not limit coverage for invasion of privacy to "written or spoken material made public." Second, the Umbrella Policy does not have an exclusion from coverage for personal injury

7

that results from the insured's deliberate unlawful conduct.

### D. St. Paul's Duty to Defend

St. Paul argues that it was not obligated to defend Green Tree because the claimants' pleadings did not specifically allege an offense covered by the personal injury terms of its policies. St. Paul contends that its use of the word "offense" in the definition of personal injury raises the level of pleading specificity that is generally required to precipitate its duty to defend. According to St. Paul, a third party's pleadings must name a specific offense listed in the personal injury definition before it has a duty to pay the costs of the insured's defense.

Under Texas law, a third party's pleadings need not allege a specific offense to evoke an insurer's duty to defend. *See St. Paul Ins. Co.*, 999 S.W.2d at 886. The duty arises if the factual allegations in a third party's pleading *potentially* state a cause of action covered under the insurance policy. *See Houston Petroleum Co.*, 830 S.W.2d at 155. St. Paul's choice of the word "offense" does not require a different standard. The term simply refers to the causes of action listed under the personal injury definition.[4] Therefore, St. Paul had a duty to defend Green Tree

---

[4]In context, the word "offense" is subject to only one reasonable interpretation. If the literal definition of "offense" were applied to the basic insurance policy, the insured would not have coverage for personal injury. "Offense" means "a violation of law; crime, often a minor one." BLACK'S LAW DICTIONARY 1108 (7th ed. 1999). St. Paul's basic insurance policies exclude all personal injuries resulting from the violation of criminal statutes. Because the

if the factual allegations potentially stated a cause of action listed under the policy's definition of personal injury.

Numerous policies in effect during the period of the alleged wrongful conduct define personal injury coverage as including injuries resulting from an invasion of privacy. The factual allegations in Corona and Saenz' pleadings state that Green Tree placed numerous telephone calls to Corona, Saenz, and Saenz' mother over a period of eight years. The pleadings alleged that the calls were rude and abusive. In *Donnel v. Lara*, 703 S.W.2d 257, 259 (Tex. App.--San Antonio, 1985, writ ref'd n.r.e.), the court of appeals recognized that invasion of privacy included telephone harassment.[5] The plaintiffs in *Donnel* alleged that the defendant "willfully . . . placed repeated phone calls to their residence at unreasonable hours and in such a manner as would highly offend a reasonable person of ordinary sensibilities." *Id*. at 258. The factual allegations in Corona and Saenz' pleadings described similar abusive telephone calls.[6]

---

definition of personal injury requires an offense, a literal translation would preclude personal injury coverage. Therefore, the only reasonable interpretation of "offense" in the context of the policy is simply that the term refers to the acts listed in the policy's personal injury definition.

[5]The *Donnel* decision was superseded on grounds that are not relevant to this case. *See Harkins v. Crews*, 907 S.W.2d 51, 61 (Tex. App.--San Antonio 1995, writ denied).

[6]St. Paul argues that because the pleadings do not specifically request damages for invasion of privacy, there is no injury for the policy to cover. In *Feed Store, Inc. v. Reliance Ins. Co.*, 774

St. Paul contends that these allegations essentially support a claim for unfair debt collection practices and should not be construed to substantiate a cause of action for invasion of privacy. According to St. Paul, finding a potential cause of action for invasion of privacy would overextend its duty to defend. While courts may liberally interpret the allegations in a pleading to determine whether the facts could potentially support a cause of action, courts "may not read facts into the pleadings, may not look outside the pleadings, and may not 'imagine factual scenarios which might trigger coverage.'" *St. Paul Ins. Co.*, 999 S.W.2d at 885 (quoting *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997)). There is no need in this case to imagine or invent a factual scenario that would evoke coverage under St. Paul's policy. The factual allegations in this case clearly support a cause of action for invasion of privacy under Texas law. Just because factual allegations may favor one cause of action over another does not alleviate an insurer's duty to defend if the facts potentially state a cause of action covered under the policy.

---

S.W.2d 73, 74-75 (Tex. App.--Beaumont 1989, writ denied) the court of appeals held that an insurer's duty to defend did not arise when a plaintiff sought only injunctive relief. The court concluded that the phrase "for such other and further relief" in the complaint did not change the suit in equity to a suit for damages. The claimants in this case did not seek injunctive relief. St. Paul's duty to defend was not impeded by the absence of a specific request for damages resulting from invasion of privacy.

10

St. Paul argues in the alternative that Green Tree knowingly violated a criminal law.[7]   St. Paul's basic commercial liability policies exclude coverage for injuries arising from knowing violations of penal statutes.  The Umbrella Policy, however, does not contain such an exclusion.  The Umbrella Policy covers any claim named in the policy that is not covered under the insured's basic insurance.  Because there is no penal exclusion in the Umbrella Policy, St. Paul had a duty to defend Green Tree in the lawsuit.

III. Conclusion

If an insurer has a duty to defend any portion of a suit, the insurer must defend the entire suit.  *See St. Paul Ins. Co.*, 999 S.W.2d at 884.  Since St. Paul has a duty to defend Green Tree based on personal injury coverage, there is no need to assess whether the duty arose under the bodily injury provisions of the policy.  We therefore affirm the district court's orders granting Green Tree summary judgment.

AFFIRMED

_____

[7]Under Texas statute, a "person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he . . . causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX. PEN. CODE ANN. § 42.07(a)(4) (Vernon 1999).

11