Joe Vander HAMM, Donald G. Scanlin, and Ann L. Scanlin, as Trustees of the Scanlin 1989 Trust Dated 10–13–89, Plaintiffs

and

Deborah Cantwell, Paul Cantwell, Michelle Calvert, Chad K. Calvert, Alec Warman, Shay Calvert, Barbara Jo Deckard, Terry Deckard, and Randi Deckard, Intervenors

v.

ALLSTATE INSURANCE COMPANY, Defendant

No. CIV.A.4:02–CV–429–H.

United States District Court, N.D. Texas, Fort Worth Division.

Sept. 17, 2003.

Hal R. Ray, Jr., Pope Hardwicke Christie Harrell Schell & Kelly, Fort Worth, TX, for Plaintiffs.

John C. Tollefson, Goins Underkofler Crawford & Langdon, Dallas, TX, for Intervenors.

James H. Moody, III, Quilling Selander Cummiskey & Lownds, Dallas, TX, for Defendant.

## OPINION AND ORDER RULING ON MOTIONS FOR SUMMARY JUDGMENT

MEANS, District Judge.

Pending before the Court are a motion for partial summary judgment by Plaintiffs and two motions for summary judgment, one by the defendant, Allstate Insurance Company ("Allstate"), and the other by Intervenors. After consideration of these motions and the related submissions, the Court concludes that Allstate's motion should be granted, and Plaintiffs' and Intervenors' motions should be denied.

### I. Facts

Plaintiffs are owners of an office building in Arlington, Texas. Intervenors sued Plaintiffs in state court alleging that certain of the Intervenors suffered physical injuries due to their exposure to chemical fumes while moving into and working in an office on the fifth floor of Plaintiffs' office building. Specifically, Intervenors' amended petition in the state-court lawsuit alleges as follows:

> During the time that [Intervenors] Deborah Cantwell, Michelle Calvert and Barbara Jo Deckard were moving into said office, contractor Perma Dek, Inc. d/b/a Amazing Surfaces ... was applying chemicals in the bathroom on the fifth floor of the building. The bathroom was just a few feet from the doorway to said offices. The chemicals applied in said bathroom included toluene and other volatile organic compounds .... Despite actual or constructive knowledge of the danger of letting said fumes accumulate, defendants failed to discharge, disperse or release same, permitting them to concentrate in the building. Fumes became trapped in the building, including the office that Plaintiffs were occupying. Plaintiffs were thereby exposed to said fumes. Over the next month, Plaintiffs worked in this office space. During the entire time that Plaintiffs worked in said office space, they were exposed to fumes from the chemicals that had been applied by ... Amazing Surfaces.

(Def.'s App. at 121–22.)

Plaintiffs are insured by Allstate under two policies, one primary and the other excess. Plaintiffs demanded that Allstate defend and indemnify them in the Intervenors' state-court suit. Allstate refused, contending that the pollution exclusions in the insurance policies exclude coverage for Intervenors' claims. The policies exclude coverage for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants ... at or from any premises, site, or location which is or was at any time owned, occupied by, or rented or loaned to any persons insured."[1] (Def.'s App. at 38, 96.)

---

[1] The excess policy excludes "[b]odily injury or property damage arising out of [the discharge of pollutants]." (Def.'s App. at 96.) The primary policy, however, excludes "any accidental event, personal injury or advertising injury arising out of [the discharge of pollutants]." (Def.'s App. at 38.) "Personal injury" is defined under the primary policy to exclude "bodily injury." (Def.'s App. at 53.)

Nevertheless, "accidental event" is defined under the policy as "an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury or property damage." (Def.'s App. at 51.) The parties apparently do not dispute that Intervenors' injuries are the result of an "accidental event," as that term is defined under the primary policy.

The term "pollutants" is defined in the policies as "any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, chemicals, and waste." (Def.'s App. at 54, 96.)

Plaintiffs brought suit against Allstate in state court for breach of contract, contending that Allstate breached the policies by failing to defend Plaintiffs in Intervenors' state-court suit. Allstate removed Plaintiff's suit to this Court on the basis of diversity jurisdiction. Intervenors subsequently intervened, contending that Allstate has a duty to indemnify Plaintiffs for any liability incurred by Plaintiffs in Intervenors' state-court action. All parties now seek summary judgment.

## II. Applicable Law

### A. Summary–Judgment Standard

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary disposition. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmovant bears the burden of proof. Rather, in that situation, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim. *See id.* at 323–35, 106 S.Ct. 2548. Where, however, the moving party bears the burden of proof on the claim upon which it seeks summary judgment, it must present evidence that establishes "beyond peradventure *all* the essential elements of the claim or defense."

*Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986).

When the moving party has carried its summary judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Duty to Defend

In a diversity action, the Court is to apply the substantive law of the forum state. *See Sentry Ins. v. R.J. Weber Co., Inc.,* 2 F.3d 554, 556 (5th Cir.1993). "Texas courts apply the 'eight corners' or 'complaint allegation' rule to determine whether an insurer has a duty to defend." *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.—Texas,* 249 F.3d 389, 391 (5th Cir.2001). "In applying the 'eight corners rule' the insurer's duty to defend is determined solely by the allegations in the most recent petition [in the underlying lawsuit] and the insurance policy." *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.,* 215 F.Supp.2d 783, 787 (E.D.Tex.2002).

"In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged. It is the facts that give rise to the actionable conduct." *Allen v. St. Paul Fire & Marine Ins. Co.,* 960 S.W.2d 909,

912 (Tex.App.—Texarkana 1998, no pet.) (footnotes omitted); *see also Green Tree Fin. Corp.*, 249 F.3d at 392 ("[t]he focus of this inquiry is on the facts alleged, not on the actual legal theories."). "The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy." *Green Tree Fin. Corp.*, 249 F.3d at 391. In determining whether the claim falls within the scope of the insurer's duty to defend, the court is to liberally construe the allegations in the petition. *Id.* Any doubts as to whether the petition states a claim that is within the scope of coverage must be resolved in favor of the insured. *Cullen/Frost Bank of Dallas N.A. v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex.App.—Dallas, 1993, writ denied). Nevertheless, "[a]rtful pleading of facts cannot bring excluded claims back within coverage." *Allen*, 960 S.W.2d at 912.

█ Once the court assesses the potential causes of action in the pleadings, the court must determine whether the alleged conduct is covered by the policy. *Green Tree Fin. Corp.*, 249 F.3d at 392. If the insurer denied coverage based on an exclusion in the policy, the burden rests with the insurer to prove the applicability of that exclusion. *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir.2001).

C. Interpretation and Construction of Insurance Policies

█ Insurance policies are controlled by the rules of interpretation and construction applicable to contracts generally. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). In construing a written contract, a court must determine "the true intent of the parties as expressed in the instrument." *Id.* When an insurance policy is worded so that it can be given a definite legal meaning, it is not

ambiguous. *Id.* "If an insurance contract is expressed in unambiguous language, its terms will be given their plain meaning and it will be enforced as written." *Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co., Inc.*, 112 F.3d 184, 186 (5th Cir.1997); *Green Tree Fin. Corp.*, 249 F.3d at 392.

█ The determination of whether a contract is ambiguous is a matter of law. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir.1992). "Language in insurance provisions is only ambiguous if the court is uncertain as to which of two or more meanings was intended." *Green Tree Fin. Corp.*, 249 F.3d at 392. If the policy "is susceptible to more than one reasonable interpretation, a court will resolve any ambiguity in favor of coverage." *Certain*, 112 F.3d at 186. Nevertheless, "[o]nly where a contract is first determined to be ambiguous may the courts consider the parties' interpretation ... and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.

### III. Analysis

█ Allstate contends that it has no duty to defend or indemnify Plaintiffs from Intervenors' claims in the state-court lawsuit because coverage is excluded under the insurance policies' pollution exclusions. The Court agrees.

The pollution exclusions exclude coverage if the alleged injury arises out of the "discharge, dispersal, seepage, migration, release or escape of pollutants ... **at or from** any premises, site, or location which is ... owned ... by ... any persons insured." (Def.'s App. at 38, 96 (emphasis added).) "Pollutants" is specifically defined in the policies to include "**any** ... irritant or contaminant, including ... fumes [and] chemicals ...." (Def.'s App.

at 54, 96 (emphasis added).) Intervenors' amended state court petition specifically alleges that their injuries resulted from "their exposure to chemicals at their place of employment on or about February 28, 1998." (Def.'s App. at 121.) Intervenors further complain that Plaintiffs allowed "fumes" from the chemical toluene to "accumulate" in the building, thus causing them injury. (Def.'s App. at 122.) Because Intervenors admit that their injuries arose from their exposure to chemical fumes, their injuries unquestionably arose from "pollutants," as that term is unambiguously defined in the policies.[2]

Plaintiffs and Intervenors also contend that the pollution exclusions do not apply because Intervenors' state-court petition does not complain about the "discharge, dispersal, seepage, migration, release or escape of pollutants," but instead complains about the accumulation of pollutants in and the failure to properly ventilate the office building.[3] Although Intervenors' petition couches their claim as seeking redress for injuries caused by an accumulation of pollutants and the failure to properly ventilate the office building, their injuries resulted in the first place from the fact that the toluene fumes moved from the bathroom to their office. Certainly, permitting the fumes to accumulate inside the building and failing to adequately ventilate the building might have exacerbated Intervenors' injuries. It is clear from Intervenors' petition, however, that their injuries were caused by their exposure, while in their fifth-floor office, to fumes from chemicals applied in the fifth-floor bathroom during a remodeling project. The only way those fumes could have affected Intervenors in their office is if the fumes first were either discharged, dispersed, or released from the bathroom or escaped,

2. Intervenors contend that "Allstate cannot prove that an ordinary person strictly construing Allstate's pollution exclusion ... would conclude that bathroom fumes are pollution. Ordinary people think of pollution as the broadcasting of harmful solids, liquids and gases into the environment: 'Smokestack pollution.' Pipes dripping fluid into rivers. Leaking drums of chemicals." (Intervenor's Br. at 6.) The problem with Intervenors' argument, however, is that the policies specifically define the term "pollutants" to include "**any** irritant or contaminant, including ... fumes ...." (Def.'s App. at 54, 96 (emphasis added).).) Thus, the policies specifically and unambiguously define the term "pollutants" broadly enough to encompass the toluene fumes that caused Intervenors' injuries. As a result, the Court finds Plaintiffs' and Intervenors' reliance on dictum in the Fifth Circuit's opinion in *Certain* misplaced, inasmuch as the policy at issue in that case did not specifically define the term "pollution." *Certain,* 112 F.3d at 186, 188 (applying Texas law; concluding that the pollution exclusion at issue barred coverage for injuries sustained as a result of the release of phenol gas into a confined tent, but agreeing, in dictum, with other courts' limitation of the definition of "pollution" to more typical types of environmental pollution); *see also American States Ins. Co. v. Nethery,* 79 F.3d 473, 475–76 (5th Cir.1996) (interpreting, under Mississippi law, a policy's definition of "pollutant"—identical to the definition contained in Allstate's policies herein—to include fumes from standard paint and glue materials used to paint the interior of the injured party's home; concluding that "[w]hether the policy definition comports with this court's notion of the usual meaning of 'pollutants' is not the issue .... Our judgment about the reasonable scope of a pollution exclusion—in the absence of ambiguity—must be tied to the language of the policy."); *Clarendon Am. Ins. Co. v. Bay,* 10 F.Supp.2d 736, 743–44 (S.D.Tex.1998) (applying Texas law; rejecting contention that the terms "pollutant," "discharge," and "dispersal" are "terms of art" that should be limited to "traditional environmental pollution").

3. In their amended petition, Intervenors allege that Plaintiffs allowed "fumes [to] accumulate" and "permitt[ed the fumes] to concentrate in the building," and that Intervenors' injuries resulted from "defective or improper ventilation." (Def.'s App. at 122.)

seeped, or migrated from the bathroom into Intervenors' office. Although Intervenors have attempted to artfully plead their claim so as to invoke coverage under the policies, because their injuries arose from the "discharge, dispersal, seepage, migration, release or escape" of a "pollutant," as that term is defined under the policies, "at ... [the] premises," the Court concludes that the pollution exclusions bar coverage.[4]

Intervenors point to the case of *Meridian Mutual Insurance Co. v. Kellman,* 197 F.3d 1178 (6th Cir.1999), as providing "a useful catalogue of many recent cases [regarding pollution exclusions]." (Intervenors' Br. at 11.) In that case, the Sixth Circuit Court of Appeals, applying Michigan law, held that the movement of fumes from chemicals used to seal a floor in the room immediately above the room where the injured party worked did not consti-

tute a "discharge, dispersal, seepage, migration, release or escape" of pollutants so as to bring the injuries within the insurance policy's pollution exclusion.[5] *Id.* at 1183. The Sixth Circuit noted, however, that a split of authorities existed regarding the issue of indoor pollution, and that several decisions "have held that a pollution exclusion bars coverage for all injuries caused by the release of contaminants, even where the contaminate is dispersed into a confined or indoor area." *Id.* at 1182. One of the decisions cited by the Sixth Circuit in support of that statement is the Fifth Circuit Court of Appeals' decision, applying Texas law, in *Certain.*[6] *Id.* (citing *Certain,* 112 F.3d at 188.) And, more recently, the Texas Court of Appeals has concluded that a pollution exclusion similar to the one at issue herein was unambiguous and barred coverage for injuries sustained by the indoor discharge of a

---

4. Intervenors contend that "the factual allegations that [Plaintiffs] did not disperse fumes negates a key factual prerequisite for the application of the exclusion: 'dispersal' or 'release' .... There are no allegations that the toluene fumes were 'dispersed.' Just the contrary." (Intervenors' Br. at 5.) Intervenors' petition alleges, however, that Plaintiffs "failed to discharge, disperse or release [the toluene fumes from] the building." (Def.'s App. at 122.) By their terms, the pollution exclusions apply to more than just the dispersal of pollutants **from** the building. The exclusions specifically provide that coverage is excluded when pollutants are dispersed or released "at ... [the] premises." (Def.'s App. at 38, 96.) Intervenors' contention that "dispersal" means "generalized dispersal into the environment," (Intervenors' Br. at 5), gives no effect to the word "at" in the pollution exclusions and is not suggested by the plain meaning of the words "dispersal" and "release." *See* Webster's Third New Int'l Dictionary 653, 1917 (1986) (defining "dispersal" as "the process or result of spreading by active migration or the passive transfer of organisms from one place to another" and "release" as "to set free from restraint, confinement, or servitude: set at liberty: let go").

5. The court specifically noted that "[w]e need not decide whether the total pollution exclusion clause at issue would bar coverage if the chemical fumes had migrated over a distance, such as through the High School's HVAC system, and harmed people throughout the building." *Id.* at 1184. Instead, the court concluded that "the fact that the injured party was not the direct user of a harmful product does not change a localized injury into the 'discharge, dispersal, seepage, migration, release or escape of pollutants' under the policy, where the injured third party was in the immediate vicinity of the harmful product at the time of injury." *Id.* at 1185. This court notes that the Sixth Circuit's interpretation of Michigan law regarding the applicability of pollution exclusions has been questioned. *See U.S. Fire Ins. Co. v. City of Warren,* 176 F.Supp.2d 728, 733 (E.D.Mich.2001).

6. As previously mentioned, in *Certain,* the Fifth Circuit concluded that a pollution exclusion barred coverage for claims arising from the discharge of phenol gas inside a confined tent. 112 F.3d at 188.

pollutant. *See Zaiontz v. Trinity Universal Ins. Co.,* 87 S.W.3d 565, 573 (Tex. App.—San Antonio 2002, pet. denied).

## *IV.   Conclusion*

For the foregoing reasons, the Court concludes that the pollution exclusion in Allstate's policies bars coverage for the injuries alleged in Intervenors' state-court petition.  As a result, Allstate's Motion for Summary Judgment [document number 10] is hereby GRANTED.  Plaintiffs' Motion for Partial Summary Judgment [document number 24] and Intervenors' Motion for Summary Judgment [document number 27] are hereby DENIED.

## *FINAL JUDGMENT*

In accordance with the opinion and order issued this same day and Federal Rule of Civil Procedure 58,

It is hereby ORDERED, ADJUDGED, and DECREED that Plaintiffs shall take nothing by way of their claims against Defendant, as Defendants have no duty to defend or indemnify Plaintiffs in the underlying suit filed against them by Intervenors in the 348th Judicial District Court of Tarrant County, Texas.  All costs of Court under 28 U.S.C. § 1920 shall be borne by Plaintiffs.