NAUTILUS INSURANCE COMPANY, Plaintiff,

v.

ACM CONTRACTORS, INC., et al., Defendants.

Civil Action No. H–07–1898.

United States District Court, S.D. Texas, Houston Division.

April 16, 2008.

---

Beth D. Bradley, Stephen A. Melendi, John Charles Tollefson, Tollefson Bradley Ball & Mitchell LLP, Dallas, TX, for Plaintiff.

Ben R. King, Attorney at Law, Houston, TX, Ellen Lewis Van Meir, Mariah Baker Quiroz, Thompson Coe et al., Dallas, TX, for Defendants.

### ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

GRAY H. MILLER, District Judge.

The court, having carefully considered the Magistrate Judge's memorandum and recommendation (Dkt. 32) and the applicable law, adopts the memorandum and recommendation.[1] It is, therefore,

ORDERED that the Magistrate Judge's memorandum and recommendation is ADOPTED by this court. Plaintiff Nautilus Insurance Company's motion for summary judgment (Dkt. 26) is GRANTED in part and DENIED in part.[2]

### FINAL JUDGMENT

In accordance with the April 16, 2008, order adopting the Magistrate Judge's memorandum and recommendation, it is

ORDERED that summary judgment is granted in favor of Nautilus Insurance

---

1. No objections were timely filed.

2. The Magistrate Judge denied summary judgment against defendant National Union Fire Insurance, (Dkt. 32, p. 7 n.20 ("[Nautilus] asks the court to declare that Defendant National Union is required to defend and/or indemnify, but has not offered any excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits to demonstrate the absence of a genuine factual issue and, therefore, has not met its summary judgment burden.")), and granted summary judgment against defendant ACM Contractors, Inc.

Company and against ACM Contractors, Inc.

All relief not expressly granted is DENIED.

Costs are assessed against ACM Contractors, Inc.

This is a FINAL JUDGMENT.

## MEMORANDUM AND RECOMMENDATION

NANCY K. JOHNSON, United States Magistrate Judge.

Pending before the court[1] is Plaintiff Nautilus's Motion for Summary Judgment (Docket Entry No. 26). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Plaintiff's motion be **GRANTED**.

### I. Case Background

The dispute in this case concerns insurance coverage under a commercial liability insurance policy issued by Nautilus Insurance Company, Inc. ("Plaintiff") to ACM Contractors, Inc. ("Defendant ACM"). Plaintiff, the insurer, brought this action against Defendant ACM, the insured, and National Union Fire Insurance Company ("Defendant National Union"), another insurer of Defendant ACM,[2] seeking a declaration that Plaintiff has no duty to defend or indemnify Defendant ACM in the lawsuit underlying this case.

### A. Underlying Lawsuit

The lawsuit underlying Plaintiff's case arose out of a construction accident that occurred on May 4, 2005, and resulted in the death of Daniel LaCombe, Jr., and injuries to Jose Louis Rios.[3]

Defendant ACM entered into a contract with Harris County, Texas, to construct a bridge in the Cypress Creek area.[4] Defendant ACM "engaged Original Concrete to provide a pumping truck for pouring concrete."[5] LaCombe, an employee of Original Concrete, was the operator of the truck, while Rios, an employee of Defendant ACM, controlled the discharge spout for the concrete.[6] In order to complete the concrete job, it was necessary to extend the pumping truck's boom apparatus within "close and dangerous proximity" of a high-voltage overhead electric transmission line.[7] The boom apparatus became

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Docket Entry No. 24.

2. Defendant National Union issued a commercial umbrella insurance policy to Defendant ACM (Policy No. EBU9024178), effective from April 14, 2005, to April 15, 2006. Plaintiff's Original Complaint for Declaratory Judgment ("Complaint"), Docket Entry No. 1, p. 3; Defendant National Union's Answer and First Amended Counterclaim ("Answer and Counterclaim"), Docket Entry No. 30, p. 4. The National Union Policy is excess to commercial general liability coverage of $1 million per occurrence and $2 million in the general aggregate. Answer and Counterclaim, Docket Entry No. 30, p. 4. Defendant National Union filed a counterclaim against Plaintiff seeking a declaration that it has no

duty to defend or indemnify Defendant ACM because all underlying insurance has not been exhausted. *Id.* at 7. The counterclaim is not a subject of the motion for summary judgment now before the court.

3. Complaint, Docket Entry No. 1, p. 3; Answer and Counterclaim, Docket Entry No. 30, p. 4.

4. Complaint, Docket Entry No. 1, p. 3; Defendant ACM's Original Answer, Docket Entry No. 9, p. 1.

5. *Id.*

6. *Id.; see also* Answer and Counterclaim, Docket Entry No. 30, p. 4.

7. Complaint, Docket Entry No. 1, p. 3; Defendant ACM's Original Answer, Docket Entry No. 9, p. 1.

energized with a high-voltage electrical current and, as a result, LaCombe was electrocuted and died.[8] Rios suffered "serious and permanent personal injuries." [9]

LaCombe's parents, his estate, and Rios [10] filed suit ("LaCombe Petition") in Harris County, Texas, against Defendants ACM and National Union, alleging negligence, negligence per se, gross negligence, Texas statutory violations, and seeking punitive damages against Defendant ACM.[11]

According to the petition filed in the underlying lawsuit:

Defendant ACM Contractors had the right to control the work site and was required by the terms and conditions of its contract with Harris County to be in charge and care of the work. Defendant ACM, acting through . . . its supervisor and the agent or employee of ACM to whom ACM had delegated responsibility for the performance of its contract with Harris County and the responsibility for the work site, thus a vice-principal of ACM, gave directions to Daniel La-Combe, Jr. as to where he was to set up the pump truck and as to where he was to extend the boom. Defendant ACM directed and controlled the location and placement of the concrete as it was being pumped and directed Daniel La-Combe, Jr. where to pump the concrete.[12]

## B. Insurance Policies

Plaintiff issued Defendant ACM a general liability insurance policy ("Nautilus Policy;" Policy No. NC418262) with effective dates from February 27, 2005, through February 27, 2006.[13] The policy stated that Plaintiff would "have the right and duty to defend the insured against any 'suit' seeking [bodily injury or property] damages. However, [Nautilus would] have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which [the] insurance does not apply." [14]

The Nautilus Policy describes a number of coverage exclusions such as the following, which are particularly pertinent to this lawsuit:

### EXCLUSION—CONTRACTORS AND SUBCONTRACTORS[15]

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to Paragraph 2.

**Exclusions** of SECTION I—COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY,

---

**8.** *Id.*

**9.** *Id.*

**10.** Rios has stipulated that he is "not suing or seeking affirmative relief from Defendant ACM" in the underlying lawsuit; therefore, his suit was not considered in this declaratory judgment action. *See* Plaintiff's Motion for Summary Judgment, Docket Entry No. 26, Ex. 3, Stipulation.

**11.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 26, Ex. 1, Plaintiff's Second Amended Original Petition.

**12.** *Id.* at 3.

**13.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 26, Ex. 2, Policy No. NC418262; Defendant National Union's Response to Plaintiff's Motion for Summary Judgment ("National Union's Response"), Docket Entry No. 28, Ex. 2, Policy No. NC418262.

**14.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 26, Ex. 2, Policy No. NC418262, p. 20.

**15.** The Nautilus Policy does not specifically define "contractor" or "subcontractor."

SECTION I—COVERAGE B–PERSONAL AND ADVERTISING INJURY LIABILITY and SECTION I—COVERAGE C—MEDICAL PAYMENTS:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of operations performed for you by contractors or subcontractors you hire or your acts or omissions in connection with your general supervision of such operations.[16]

\* \* \*

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### CONTRACTORS SUBCONTRACTED WORK—CONDITIONS

The 'Contractors—Subcontracted Work' classification(s) shown in the Declarations applies to that portion of the operations performed for you by your "adequately insured" contractors or subcontractors.

Coverage only applies to liability arising out of work performed for you by your "adequately insured" contractors or subcontractors and only if the contractors or subcontractors:

(1) Provide hold harmless agreements indemnifying against all losses for the work performed by or on behalf of the contractors; and

(2) Name you as an Additional Insured on all contractors or subcontractors Commercial General Liability policies.

\* \* \*

The following exclusion is **added** to Paragraph **2. Exclusions** of **SECTION I—COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY:**

We will not extend any defense and/or coverage under this policy for work performed by those contractors or subcontractors you hire who are not "adequately insured".

The following definition is **added** to the **DEFINITIONS** Section:

"**Adequately insured**" means that the contractors or subcontractors that perform operations for you maintain Commercial General Liability insurance in force with limits of insurance for their operations that are equal to or greater than the limits of insurance shown in the Declarations of this policy, including operations performed for them by others.[17]

Plaintiff filed the instant action on June 5, 2007, against Defendant ACM, a Texas corporation with its principal place of business in Harris County, Texas, and Defendant National Union, a Pennsylvania insurance company with its principal place of business in Harrisburg, Pennsylvania.[18]

In its motion for summary judgment, Plaintiff contends that all of the claims asserted in the LaCombe Petition against Defendant ACM "arise out of" work performed for ACM (a contractor) by Original Concrete (a subcontractor); therefore, the Nautilus Policy does not cover LaCombe's claims and Plaintiff has no duty to defend or indemnify Defendant ACM.[19] Plaintiff

---

**16.** *Id.* at 49.

**17.** *Id.* at 50.

**18.** Complaint, Docket Entry No. 1, p. 2.

**19.** Plaintiff's Motion for Summary Judgment, Docket Entry No. 26, p. 13.

asks the court to enter a declaration that it has no duty to defend or indemnify Defendant ACM in the underlying lawsuit, and that Defendant National Union is required to defend or indemnify ACM.[20] Plaintiff also prays for damages incurred in defense of the underlying case, as well as court costs.

In response, Defendant ACM asserts that there is a genuine issue of material fact as to whether Original Concrete was a subcontractor or "materialman."[21] ACM also argues that the contractor-subcontractor exclusion clause is trumped by the policy provision granting coverage to subcontractors that are "adequately insured."[22] Defendant National Union contends that Plaintiff must continue to defend ACM because the Nautilus Policy's contractor-subcontractor exclusion is ambiguous and the LaCombe Petition's allegations regarding the relationship between Defendant ACM and Original Concrete are vague.[23]

## II. Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of

the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." *Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir.2001); *see also Boston Old Colony Ins. Co. v. Tiner Assocs.*

---

**20.** Plaintiff argues that "because the Nautilus policy provides no coverage for ACM, Defendant National Union must 'drop down' and defend and/or indemnify ACM unless its policy also excludes coverage." *Id.* at 5. Plaintiff asks the court to declare that Defendant National Union is required to defend and/or indemnify, but has not offered any excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits to demonstrate the absence of a genuine factual issue and, therefore, has not met its summary judgment burden. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.1992).

**21.** Defendant ACM's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Docket Entry No. 27, p. 4.

**22.** *Id.*

**23.** National Union's Response, Docket Entry No. 28, p. 4.

*Inc.*, 288 F.3d 222, 227 (5th Cir.2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir.1987).

This case is in federal court under diversity jurisdiction; therefore, state law governs substantive matters. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Any insurance policy payable to a "citizen or inhabitant" of Texas by an insurance company doing business in Texas is held to be governed by Texas law regardless of where the contract was executed or where the premiums are paid. Tex. Ins.Code Ann. art. 21.42 (Vernon 2007). None of the parties challenge the application of Texas law to the claims considered in this Memorandum and Recommendation. Accordingly, Texas law applies to the merits of this case.

### III. Analysis

Texas law is clear in that an insurer's duty to defend and duty to indemnify are separate duties, and an insurer may have a duty to defend even when it has no duty to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). In other words, allegations raised against the insured may fit within the policy coverage and trigger a duty to defend even if the facts actually established in the underlying suit negate the insurer's duty to indemnify. *Id.*; *see also GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex.2006). However, if the factual allegations in an underlying complaint fall outside the policy coverage, neither duty is triggered. *See Farmers Tex. County Mut. Ins. Co.*, 955 S.W.2d at 84.

It is the insured that bears the initial burden of showing policy coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998)(applying Texas law); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir.2005)(applying Texas law). If the insurer proves that an exclusion applies, then the burden shifts back to the insured to show that the claim falls within an exception to the exclusion. *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir.2005) (applying Texas law).

When contemplating whether the underlying litigation triggers policy coverage, the court applies the "eight-corners" rule. *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex.2005). Under the eight-corners rule, an insurer's duty to defend arises if the complaint in the suit against the insured alleges facts that potentially support claims for which there is coverage. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997); *see also St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 394 (5th Cir.2001)(applying Texas law) ("Under Texas law, a third party's pleadings need not allege a specific offense to evoke an insurer's duty to defend .... The duty arises if the factual allegations in a third party's pleading *potentially* state a cause of action listed under the personal injury definition."). The court's only job under the eight-corners inquiry is to compare the four corners of the pleading with the four corners of the insurance policy. *Lincoln Gen. Ins. Co.*, 401 F.3d at 350; *see also Nat'l Union Fire Ins. Co. of Pittsburgh*, 939 S.W.2d at 141.

When applying the eight-corners rule, the court considers the factual allegations without regard to their truth or falsity. *GuideOne Elite Ins. Co.*, 197 S.W.3d at 310. Only the facts alleged, not the legal theories asserted, are relevant. *Lin-*

*coln Gen. Ins. Co.*, 401 F.3d at 350. The court interprets the allegations liberally and resolves all doubts regarding the duty to defend in favor of the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh*, 939 S.W.2d at 141. However, the court may not read facts into the pleadings, look outside the pleadings,[24] or imagine factual scenarios that might trigger coverage. *Id.* at 142.

■ After considering the factual allegations in the underlying suit, the court then compares them to the terms of the insurance policy. *St. Paul Fire & Marine Ins. Co.*, 249 F.3d at 392. Under Texas law, insurance policies are subject to the general rules of contract interpretation. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir.2002)(applying Texas law); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740–41 (Tex.1998). The terms are to be "given their plain, ordinary and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense." *Fed. Ins. Co. v. Srivastava*, 2 F.3d 98, 101 (5th Cir.1993)(applying Texas law and quoting *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex.1976)). The wording of a contract is unambiguous if it can be given a definite or certain legal meaning. *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). Policy language subject to two or more reasonable interpretations is considered ambiguous. *Id.* Determining whether an ambiguity exists in the policy rests in the hands of the court. *Id.*; *see also St. Paul Fire & Marine Ins. Co.*, 249 F.3d at 392.

■ Plaintiff contends that the underlying lawsuit, as described in the LaCombe Petition, includes allegations that LaCombe was an employee of a subcontractor (Original Concrete) and was injured while performing work for the general contractor (ACM).[25] Due to the nature of the

24. As of yet, the Texas Supreme Court has not recognized any exception to the eight-corners rule. However, the court, in dicta, did favorably cite a Fifth Circuit Court of Appeals decision in which the federal court predicted that Texas's highest court would recognize an exception to the eight-corners rule permitting consideration of extrinsic evidence only "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *GuideOne Elite Ins. Co.*, 197 S.W.3d at 308–09 (quoting *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir.2004)). Defendant National Union asserts that the issue in this case (whether the relationship between ACM and Original Concrete is that of a contractor and subcontractor) falls within the limited exception to the eight-corners rule because it is an issue of coverage and, thus, National Union offers an Original Concrete job ticket as evidence that a contractor-subcontractor relationship did not exist between ACM and Original Concrete. However, the court in this case finds it possible to discern whether policy coverage is potentially implicated in the LaCombe Petition; therefore, even assuming the Texas Supreme Court would recognize an exception to the eight-corners rule, the threshold requirement for such exception has not been met and the court will not consider any extrinsic evidence offered by Defendants.

25. In its motion, Plaintiff relies heavily on the case of *Gen. Agents Ins. Co. v. Arredondo*, which held that a contractor-subcontractor exclusion precluded insurance coverage of an injured subcontractor employee. 52 S.W.3d 762, 764–65 (Tex.App.-San Antonio 2001, pet. denied). However, the court does not find the case instructive because, as indicated by Defendant National Union, in *General Agents* it was undisputed that a contractor-subcontractor relationship existed. *Id.* at 766. The issue in *General Agents* was whether the contractor-subcontractor policy exclusion excluded coverage for personal injuries bearing a causal relationship to a subcontractor's work, not whether one of the parties was a subcontractor falling under the exclusion. *Id.*

relationship between Defendant ACM and Original Concrete, Plaintiff maintains that the contractor-subcontractor exclusion in the Nautilus Policy applies and Plaintiff has no duty to defend or indemnify Defendant ACM.

■ Defendants ACM and National Union contend that Plaintiff failed to establish that Original Concrete was a subcontractor excluded from coverage under the Nautilus Policy. They assert that, because the LaCombe Petition does not describe the relationship between Defendant ACM and Original Concrete, the pleadings are vague. Defendant ACM contends that Original Concrete was merely a part of the concrete delivery process and at no time performed any part of Defendant ACM's contract with Harris County;[26] whereas, Defendant National Union contends that ACM merely leased Original Concrete's truck and driver for the limited purpose of pouring concrete.

Additionally, Defendant National Union asserts that the Nautilus Policy's contractor-subcontractor exclusion provision is ambiguous and must be interpreted in Defendant ACM's favor. National Union reasons that neither the policy nor Texas law defines the terms "contractor" or "subcontractor" and interprets the exclusion to apply only to "claims arising out of operations performed by a party who is specifically alleged to be a contractor or subcontractor, or who is defined as a contractor or subcontractor by written agreement," and not to preclude coverage for claims involving a party whose goods or services were "merely leased, solicited or contracted for by the insured."[27]

Looking first to arguments concerning ambiguity in the language of the pleading, the court does not find the LaCombe Petition's description of ACM and Original Concrete's relationship to be vague. Defendants ACM and National Union point the court to language in the petition stating: "Defendant ACM *engaged* Original Concrete to provide a pumping truck for pouring concrete."[28] Defendants assert that use of the term "engaged" is not necessarily an allegation that Defendant ACM hired or employed Original Concrete as a subcontractor. Defendant Nation Union suggests that the petition language could be reasonably interpreted to mean that ACM merely leased Original Concrete's truck to pump concrete.

Webster's New World Dictionary defines "engage" or "engaged" as: (1) "to give or assign as security for a debt;" (2) "to bind (oneself) by a promise; pledge;" (3) "to arrange for the services of; hire; employ;" (4) "to arrange for the use of; reserve;" (5) "to draw into; involve;" (6) "to attract and hold;" (7) "to employ or

---

26. Defendant ACM also argues that, even if Plaintiff is able to establish a contractor-subcontractor relationship between ACM and Original Concrete, its motion must still be denied because Plaintiff failed to prove that Original Concrete was not "adequately insured" as defined in the policy. Defendant ACM characterized the provision referring to contractors and subcontractors that are adequately insured as an exception to the contractor-subcontractor exclusion allowing coverage to ACM for parties who prove possession of adequate insurance. Where the court may not agree that the provision regarding adequate insurance constitutes an exception, it certainly presents an issue of coverage. It is the burden of the insured, not the insurer, to show policy coverage. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998)(applying Texas law); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir.2005) (applying Texas law).

27. National Union's Response, Docket Entry No. 28, p. 9.

28. *See* National Union's Response, Docket Entry No. 28, Ex. 1, Plaintiff's Second Amended Original Petition, p. 2 (emphasis added).

keep busy; occupy;" (8) "to enter into conflict with;" and (9) "to interlock with" or "mesh together." 450 (3d College Ed. 1988); *see also* Black's Law Dictionary 570 (8th ed. 2004) (defining "engage" as "to employ or involve oneself; to take part in; to embark on").

The LaCombe Petition's use of "engaged" to describe ACM's interaction with Original Concrete is not vague. The court agrees with Plaintiff in that, looking within the four corners of the LaCombe Petition at the term "engaged" and the language surrounding said term, there is only one meaning that makes sense. With the exception of the definitions for "engaged" listed above that do not fit within the context of a construction project (e.g. "to give or assign as security" and "to interlock with"), the meaning of the term is consistent with the description of a contractor-subcontractor relationship. Specifically, "to bind (oneself) by a promise" is indicative of a contractual relationship. "[T]o arrange for services," "hire," "employ," and "occupy" plainly and logically indicate the common usage of engaged to mean hired or employed in the context of the LaCombe Petition.

Defendant National Union's suggestion that "engaged" could be interpreted to mean "leased" is unreasonable. Defendant ACM's engagement of Original Concrete involved more than just the use of a concrete truck. It involved the services of a driver, LaCombe. LaCombe, an employee of Original Concrete, operated the pump truck to place the concrete in its desired location. Defendant ACM did not "lease" LaCombe; it employed Original Concrete and arranged for LaCombe's services.

■ Looking next to the four corners of the Nautilus Policy, the court does not find the contractor-subcontractor exclusion to be ambiguous. Defendant National Union provides no support for its rigid interpre-

tation that a party must be specifically labeled or defined as a "contractor" or "subcontractor" in order to fall within the exclusion provision. The Nautilus Policy provides no indication that the terms "contractor" and "subcontractor" are to be given any technical or special meaning; thus, the terms should be given their "plain, ordinary and generally accepted meaning." *See Fed. Ins. Co.,* 2 F.3d at 101.

"Contractor" and "subcontractor" are commonly used terms with a generally accepted meaning, particularly in describing parties involved in construction projects and/or contracts. Webster's New World Dictionary defines "contractor" as "one of the parties to a contract" or "a person who contracts to supply certain materials or do certain work for a stipulated sum." 302 (3d College Ed. 1988); *see also* Black's Law Dictionary 350 (8th ed. 2004). "Subcontractor" is defined as "a person or company that assumes by secondary contract some or all of the obligations of the original contractor." Webster's New World Dictionary 1333 (3d College Ed. 1998); *see also* Black's Law Dictionary 1464 (8th ed. 2004) ("one who is awarded a portion of an existing contract by a contractor, esp. a general contractor"). Black's Law Dictionary also provides an example of a typical contractor-subcontractor scenario: "a contractor who builds houses typically retains subcontractors to perform specialty work such as installing plumbing, laying carpet, making cabinetry, and landscaping." *Id.*

Where Defendant National Union maintains that Texas common law has not defined "contractor" and "subcontractor," at least one Texas appellate court has held that the term "subcontractor" is not ambiguous and has "one ordinary meaning." *Crow–Williams v. Fed. Pacific Elec. Co.,* 683 S.W.2d 523, 525 (Tex.Civ.App.-Dallas 1984, no writ). The *Crow–Williams* court recognized the ordinary meaning of "subcontractor" to be "an individual or busi-

ness firm contracting to perform part or all of another's contract," citing Webster's New Collegiate Dictionary 1158 (1976), or "one who takes a portion of a contract from a principle contractor or another subcontractor," citing Black's Law Dictionary 1277 (rev. 5th ed. 1979). *Crow–Williams* indicated that a materialman or supplier can be, and often is, considered a subcontractor under the general usage of the term. *Id.*

There appears to be nothing in ACM and Original Concrete's interaction that is atypical of the relationship between a contractor and subcontractor working on a construction project. They fit within the prescribed general meanings of contractor and subcontractor.

There is no dispute that ACM had a contract with Harris County to construct a bridge. ACM is a contractor. Defendant ACM arranged to have Original Concrete provide the concrete for the bridge, and Original Concrete obviously agreed to do so. Original Concrete delivered the concrete in one of its trucks and one of its employees, LaCombe, poured the cement at the location designated by Defendant ACM.

Defendant ACM argues that Original Concrete was merely a part of the delivery process, but the court disagrees. As described above, Original Concrete provided not only the cement truck, but the services of LaCombe, who operated the truck while the cement was being placed in its desired location. Defendant ACM's argument that Original Concrete provided nothing in furtherance of ACM's contract with Harris County is absurd. The court can see no other purpose for which Original Concrete might have been called to the construction site. Original Concrete provided and poured the concrete Defendant ACM needed to further the construction of the bridge. Moreover, even if Original Concrete was characterized as only a part of the delivery process, *Crow–Williams* indicates that materialmen and suppliers are also subcontractors. 683 S.W.2d at 525.

The four corners of the pleadings did not allege facts stating a cause of action which potentially fell within the four corners of the Nautilus Policy's coverage. The language of the LaCombe Petition and Nautilus Policy at issue is unambiguous. There is no genuine issue as to whether a contractor-subcontractor relationship existed between Defendant ACM and Original Concrete; thus Defendant ACM falls under the contractor-subcontractor coverage exclusion. Plaintiff has no duty to defend and no duty to indemnify Defendant ACM in the underlying lawsuit.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have ten days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, either electronically or by mail to P.O. Box 61010, Houston, Texas, 77208. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk Street, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 31st day of March, 2008.